UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ETHA JONES and                          )
AGNESS McCURRY,                         )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )       No.:   2:23-CV-29-TAV-CRW
                                        )
JUDGE THOMAS WRIGHT,                    )
ABBY WALLACE,                           )
AMY BRIGGS,                             )
JUDGE JAMES LAUDERBACK,                 )
JEFFREY WARD,                           )
JUDGE JOHN RAMBO,                       )
JUDGE JONATHAN MINGA,                   )
JOSEPH SHULTZ,                          )
KELLY McCURRY,                          )
JUDGE LISA RICE,                        )
MARK HARRIS,                            )
JUDGE STACY STREET,                     )
STEVE FINNEY,                           )
JUDGE SUZANNE COOK,                     )
BENJAMIN McCURRY, and                   )
SANDY PHILLIPS,                         )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION

This civil matter is before the Court on three pending report and recommendations ("R&Rs") issued by United States Magistrate Judge Cynthia R. Wyrick [Docs. 67 (as amended by Doc. 95), 102, 108], plaintiffs' motion to strike an amended R&R [Doc. 96], plaintiffs' motions to amend the complaint [Docs. 109, 114], several appeals of Judge Wyrick's orders [Docs. 33, 45, 89, 104], several motions by plaintiffs seeking final disposition of their pending motions [Docs. 101, 105, 126, 131], a motion for a

preliminary injunction [Doc. 106], and a motion to recuse [Doc. 128]. These matters are now ripe for the Court's review.

## I.  Background

Plaintiff McCurry and defendant Benjamin McCurry ("Benjamin") were married on September 24, 2016, and one child was born to the marriage, in July 2017. *McCurry v. McCurry*, No. E2022-00635-COA-R3-CV, 2022 WL 17347397, at *1 (Tenn. Ct. App. Dec. 1, 2022). [Doc. 24-19, p. 6 (incorporating the background set forth in *McCurry*)]. The parties separated in August 2018, and were divorced on March 5, 2019, by order of the Circuit Court for Washington County. *Id.* On October 9, 2019, the trial court entered a permanent parenting plan naming Benjamin the primary residential parent but permitting plaintiff McCurry visitation and some joint decision-making authority. *Id.*

Since then, both plaintiff McCurry and Benjamin have filed numerous motions regarding changing the child custody arrangement and seeking to hold the other parent in contempt of the parenting plan. *Id.* [*See e.g.*, Doc. 24-1, pp. 7–10, 15–20; Doc. 24-10, pp. 1–6]. While it would be impossible for the Court to set forth an all-encompassing record of the litigation between the parties in this action, the Court will provide some brief background of the relevant events in 2022 and 2023, as set forth in the amended complaint [Doc. 24] and relevant attachments.

## Petitions for Restraining Orders

On July 7, 2022, Benjamin and his then-fiancée, defendant Kelly McCurry (then, Kelly Wray) ("Kelly") filed petitions for orders of protection against plaintiff McCurry

2

[Doc. 24-27; Doc. 24-32, pp. 1–6]. Both Benjamin and Kelly asserted in their petitions that the night prior, July 6, 2022, plaintiff McCurry arrived at Kelly's home and began forcefully banging on the door at 9:00 or 9:30 p.m. because Benjamin did not respond to her text messages [Doc. 24-27, p. 3; Doc. 24-32, p. 4]. Plaintiff McCurry refused to leave, and the police were called [*Id.*]. A judicial officer found good cause for Kelly's petition and issued a temporary order of protection, setting a hearing for July 29, 2022 [Doc. 24-27, p. 6]. However, Judge James Edgar Lauderback denied Benjamin's request for a temporary order of protection and set the matter for a hearing on July 14, 2022 [Doc. 24-32, p. 7].

At the July 14, 2022, hearing, Judge Lauderback dismissed Benjamin's request for an order of protection [Doc. 24-16, p. 59; Doc. 24-32, pp. 11–12]. However, Judge Lauderback *sua sponte* entered a joint mutual restraining order, limiting communication between Benjamin and plaintiff McCurry to text messages or emails, except for emergency situations involving their son, and limiting contact between the parties to meeting to exchange the child [Doc. 24-16, pp. 60–61; Doc. 24-15].

On August 5, 2022, a hearing was held on Kelly's petition for a restraining order before Judge Robert G. Lincoln [Doc. 24-29]. Judge Lincoln denied the petition because there was no relationship between Kelly and plaintiff McCurry at the time of the July 6 incident, and the one-time incident did not constitute "stalking" for purposes of obtaining a restraining order [Doc. 24-29, pp. 89–92; Doc. 24-28].

**Emergency Ex Parte Motion**

3

In September 2022, Benjamin filed an "Emergency Ex Parte Motion to Suspend Mother's Parenting Time and Motion for a Psychological Evaluation," ("Emergency Motion"), through his counsel, Sandy Phillips [Doc. 24, p. 11; Doc. 24-1, pp. 1–5]. In that motion, Benjamin accused plaintiff McCurry of suffering from mental health issues, tending to lash out and lose physical control when frustrated, and displaying delusional thinking [Doc. 24-1, pp. 1–5]. The motion argues that this tendency "is also evidenced by the behavior she elicited at the circuit court clerk's window, resulting in a warning to everyone who comes to the window to conduct themselves appropriately" [*Id.* at 1]. Plaintiffs contend that the Emergency Motion contained claims of "aggravated perjury and other falsehoods" regarding plaintiff McCurry [Doc. 24, p. 35].

On September 29, 2022, Judge Lauderback found that, based on the Emergency Motion, probable cause existed that the subject child may be at risk of immediate harm, and therefore, granted Benjamin sole custody of the child until a hearing could be held on the Emergency Motion [*Id.* at 12; Doc. 24-1, p. 24]. Judge Lauderback set a hearing on the matter for October 12, 2022 [Doc. 24-1, p. 24]. However, on October 12, 2022, Judge Lauderback entered an Order of Recusal based on plaintiff McCurry's naming him as a defendant in a lawsuit filed in Washington County Chancery Court [Doc. 24, p. 12; Doc. 24-1, p. 30].

Subsequently, Senior Judge Thomas J. Wright was assigned to the case and reset the hearing on the Emergency Motion for February 7, 2023 [Doc. 24-1, pp. 27–29]. It is at this February 7, hearing that many of the events detailed in the amended complaint

4

occurred. According to plaintiffs, at the start of the hearing, Judge Wright swore all witnesses except plaintiff Jones, who appeared via WebEx [Doc. 24, p. 13]. Judge Wright then permitted Attorney Phillips to proceed with her opening statement uninterrupted. However, when plaintiff McCurry began her opening statement, Judge Wright interrupted her "to debate her lawful permanent residency under the federal Violence Against Women Act" ("VAWA") [*Id.*]. Plaintiff McCurry alleges that Judge Wright then called a recess and incarcerated her because of the approval of her VAWA petition but provided no reason for the incarceration at the time [*Id.* at 14]. Plaintiff McCurry states that she was "forced to call her witness," plaintiff Jones "who was waiting on hold to testify via Webex" but the arresting officers grabbed her phone and ended the communication, which resulted in plaintiff McCurry being charged with resisting arrest and assault on a first responder [*Id.* at 14–15; Doc. 24-2, pp. 52–53].

During the recess, Judge Wright filed a contempt order [Doc. 24, p. 15]. This order stated that, during opening statements, plaintiff McCurry made multiple references to her "VAWA" and Judge Wright requested a copy of the VAWA petition [Doc. 24-2, p. 2]. During this discussion, Judge Wright addressed a question to Attorney Phillips and plaintiff McCurry began talking again, at which point Judge Wright "sternly told her to stop" [*Id.*]. Thereafter, plaintiff McCurry continued talking despite repeated commands to stop, at which point Judge Wright recessed the proceeding and ordered plaintiff McCurry taken into custody for contempt of court [*Id.* at 3]. This contempt order indicates that it was hand delivered to plaintiff McCurry on February 7, 2023 [*Id.*].

5

After approximately three hours, Judge Wright returned to the courtroom and ordered plaintiff McCurry be released from custody [Doc. 24, p. 16]. The hearing proceeded, although plaintiff McCurry claims she was afraid to object to the proceedings for fear of retaliation from Judge Wright [*Id.* at 17]. When plaintiff Jones testified, Judge Wright did not swear her in, and also attacked plaintiff Jones by stating that she was not "an immigration expert" [*Id.*].

According to plaintiff, she was incarcerated a second time during the course of this hearing "because she objected to the use of her federal lawsuit citing the Tennessee Court of Appeals Eastern Division 3:22-CV-00380" [*Id.* at 18]. A second contempt order was issued stating that "at approximately 6:30 pm, Ms. McCurry's inability to control herself and comply with court orders to stop talking reached a peak again" when she interrupted the judge and opposing counsel repeatedly [Doc. 24-2, p. 7]. Judge Wright sentenced plaintiff McCurry to 24 hours in jail for contempt [*Id.*].

After having plaintiff McCurry taken into custody a second time, Judge Wright resumed the hearing without plaintiff McCurry and a date of March 24, 2023, was set for continuing the hearing [Doc. 24, p. 18; Doc. 24-2, pp. 55–58].

Plaintiff McCurry claims that she suffered injuries from force used by the officers at the detention center as a result of Judge Wright ordering her incarceration, and she required a financial loan from plaintiff Jones because she had to take time off work to recover from her injuries [Doc. 24, pp. 18–19, 22]. Plaintiff Jones claims that she

suffered severe emotional distress from overhearing plaintiff McCurry being taken into custody [*Id.* at 30–34].

Ultimately, on April 26, 2023, Judge Wright granted the Emergency Motion and awarded sole custody to Benjamin, determining that plaintiff McCurry suffered from "paranoia" and "delusional thinking" [*Id.* at 25; Doc. 24-19]. Judge Wright cited plaintiff McCurry's filings in both state and federal court and stated that "[r]ather than accept any rejection, she has decided that everyone involved with her cases or complaints is in a giant conspiracy. This is delusional thinking" [Doc. 24-19, p. 12].

**Briggs Lawsuit**

On October 5, 2022, plaintiff McCurry filed suit against Clerk of Court Amy Briggs in the Chancery Court for Washington County alleging defamation [Doc. 24-6, pp. 1–4]. In her complaint, plaintiff McCurry explained that an incident occurred on September 21, 2020, at the clerk's office, in which plaintiff McCurry was alleged to have conducted herself in a manner that was "boisterous, unruly, loud, yelling and vulgar" [*Id.* at 2–3]. Plaintiff McCurry alleged that, as a result of that incident, an order was filed and posted on the clerk's office window on October 5, 2020, setting forth expectations for public behavior at the clerk's office [*Id.* at 3]. Plaintiff McCurry further alleged that Attorney Phillips used this incident and the subsequent order as evidence of plaintiff McCurry's mental health issues in the Emergency Motion, and "[i]t appeared that Counsel Phillips possibly spoke with [Briggs] about the order to obtain such specific

7

details relating to [plaintiff McCurry] that is not stated directly from the order" [*Id.*]. The order specifically stated:

> All persons entering the George Jaynes Justice Center are expected to conduct themselves in an appropriate manner at all times. Any person seeking help or assistance at any clerk's window who exhibits disorderly conduct of any kind shall be immediately escorted from the building by the Washington County Sheriff's Department. Disorderly conduct includes, but is not limited to, boisterous, unruly behavior, loud yelling, vulgar language, and any conduct disrespectful to the clerks or other courthouse personnel.

[Doc. 24-7, p. 1].

Briggs filed a motion to dismiss the complaint [*Id.* at 2]. Judge Wright presided over this matter and set a hearing date on a pending motion to dismiss "without regard for [plaintiff McCurry's] schedule [Doc. 24, p. 26]. Plaintiff McCurry appears to claim that Judge Wright and Jeffrey Ward, counsel for Briggs, ignored her motion to continue the hearing date, but that she also "refused to attend the [hearing] because Judge Wright made a mockery of the entire judiciary at Washington County Tennessee" [*Id.* at 26–27].

At a hearing on May 16, 2023, Judge Wright stated that the case was set for a hearing on the motion to dismiss, but, after close of business the day prior, plaintiff McCurry had filed a motion to dismiss/cancel trial [Doc. 24-8, p. 4]. However, Judge Wright found that there was nothing new in the motion and no basis for cancelling the hearing. Judge Wright further found that plaintiff McCurry was aware there was a hearing scheduled for that day, but she was not present, and therefore, the hearing would

proceed without her [*Id.*].[1]  Ultimately, Judge Wright granted Briggs's motion to dismiss [Doc. 24-23].

**Criminal Proceedings**

As noted *supra*, plaintiff McCurry was charged with resisting arrest and assault against a first responder, based on the events surrounding her being taken into custody for the first time on February 7, 2023 [Doc. 24-33, p. 34].  Although not entirely clear from the record before this Court, it appears that plaintiff McCurry was ultimately indicted on the charge of resisting arrest only [*Id.* at 57–58].  Plaintiff McCurry filed numerous motions, including a "Motion to Dismiss Charges," "Motion for Discovery," "Motion in Limine to Exclude Testimony from Arresting officers in the Affidavit of Complaint," and "Motion Requesting Presiding Judge Hardin to Address the Conduct of Law Clerk Christie that Indicate a Conspiracy to Miscarry Justice Against Defendant," all of which were denied by Judge Johnathan Minga in March 2023 [*Id.* at 1].  It appears that at the time of the filing of the amended complaint in the instant case, this criminal proceeding remained pending [*See* Doc. 24-33, p. 60 (email dated May 16, 2023, from a Washington County District Attorney answering questions about plaintiff McCurry's upcoming June 5, 2023, hearing; Doc. 24 (amended complaint, filed May 24, 2023)].

---

[1] In the motion, plaintiff McCurry sought to have the hearing cancelled based on the instant federal lawsuit against Judge Wright [Doc. 24-21, pp. 1–6].

9

## II.     Pending Motions

### A.     Second Motion to Recuse

The Court first addresses plaintiffs' second motion for recusal [Doc. 128].  As will be discussed in more detail *infra*, on September 11, 2023, this Court issued a show cause order, noting that it appeared plaintiffs had not properly served defendants Senior Judge Thomas Wright, Judge James Lauderback, Judge Suzanne Cook, Chancellor John Rambo, Judge Lisa Rice, Judge Stacy Street, District Attorney General Steve Finney, Assistant District Attorney Mark Harris, Assistant District Attorney Joseph Shults, and Assistant District Attorney Abby Wallace (collectively the "State Defendants") [Doc. 110].  The Court thus ordered plaintiffs to provide evidence that they had properly served these defendants or otherwise show cause why service had not been made [*Id.*].

The next day, plaintiffs moved for recusal of the undersigned, claiming that the timing and content of the show cause order demonstrated that the undersigned had a personal bias against plaintiffs and a desire to dismiss their case [Doc. 112].  The Court denied the motion for recusal, explaining that the show cause order was properly entered to ascertain whether service had been properly effectuated, and plaintiffs' grounds for recusal were simply dissatisfaction with the Court's rulings [Doc. 117].   Plaintiffs appealed this order, denying recusal, to the Sixth Circuit [Doc. 120], and the Sixth Circuit subsequently dismissed the appeal for lack of jurisdiction [Doc. 124].

Upon the dismissal of the appeal, the Court again took up this matter, and issued a second show cause order, reiterating that it appeared plaintiffs had not properly served

10

the State Defendants [Doc. 127]. Plaintiffs promptly filed this second motion for recusal [Doc. 128]. Plaintiffs assert that the second show cause order was intended to "harass" them and "has established new grounds for mandatory recusal" of the undersigned [*Id.* at 2]. Plaintiffs state that they submitted proof of service, citing documents 28 and 29, and claim that the undersigned is "threatening dismissal" despite having viewed those documents [*Id.*]. Plaintiffs also reiterate their prior arguments that the issuance of a scheduling order in this case prior to the show cause order "misled Plaintiffs into believing that [the undersigned] accepted [plaintiffs] arguments" [*Id.* at 8]. Finally, plaintiffs note that they have sued the undersigned in a separate federal action [*Id.* at 10].

As the Court previously explained [Doc. 117], § 455(a) requires disqualification when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Plaintiff bears the burden of establishing that bias exists. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991). The question under § 455(a) is objective: whether the judge's impartiality might be questioned from the perspective of a reasonable person. *See Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016); *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990). "A bias sufficient to justify recusal must be a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Id.* (internal quotation marks omitted). As a result, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

11

The Sixth Circuit has cautioned that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (alteration in original) (citation omitted); *see also United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) ("Although a judge is obliged to disqualify himself where there is a close question concerning his impartiality, he has an equally strong duty to sit where disqualification is not required" (citation omitted)). In short, unnecessary recusals waste judicial resources. *City of Cleveland v. Krupansky*, 619 F.2d 576, 579 (6th Cir. 1980). Likewise, granting groundless disqualification motions encourages judge-shopping. *Birchfield v. Deutsche Bank Nat'l Trust Co.*, No. 2:19-cv-5, 2020 WL 735870, at *2 (E.D. Tenn. Feb. 13, 2020).

To the extent that plaintiffs reiterate their grounds for recusal set forth in their first motion, the Court again finds that recusal is not appropriate for the reasons previously set forth [Doc. 117].

To the extent that plaintiffs' motion is based on the second show cause order, once again, plaintiffs' grounds for recusal are simply dissatisfaction with the content of the order, and no reasonable person could conclude that the undersigned's impartiality could be questioned or that any personal bias against plaintiffs exists. *See Liteky*, 510 U.S. at 555; *Lattanzio v. Brunacini*, No. CV 5:16-171, 2018 WL 1865164, at *2 (E.D. Ky. Apr. 18, 2018) ("[Plaintiff's] arguments that the Court does not 'hear' the plaintiff and 'sidesteps any negative motion issues brought before [it] by [the] plaintiff' are baseless

and clearly stem from his dissatisfaction with the Court's previous rulings."). Indeed, the Court notes that, based on plaintiffs' failure to appropriately respond to the first show cause order, the Court could have dismissed plaintiffs' claims against the State Defendants, without issuing the second show cause order. However, in deference to plaintiffs' pro se status, the Court provided plaintiffs with another opportunity to cure the defect, discussed in further detail *infra*, in their service of the State Defendants. The Court's provision of additional opportunities for plaintiffs to properly proceed in their claims against the State Defendants in no way shows bias *against* plaintiffs.

Finally, to the extent that plaintiffs contend that recusal is warranted based on the undersigned's "refusal to issue Orders to dispose of the Magistrate's reports" [Doc. 128, pp. 3–4], the Court notes that the most recent R&R [Doc. 108] was issued on September 6, 2023, and only became ripe for this Court's review October 2, 2023, 14 days after plaintiffs filed their objections [Doc. 113]. *See* E.D. Tenn. L.R. 7.1(a) (providing 14 days for an opposing party to file a response to objections). By that time, plaintiffs had sought recusal of the undersigned [Doc. 112], which the Court needed to address prior to ruling on the pending R&Rs. *See Church of Jesus Christ v. U.S. Federal Gov't*, No. 1:14-cv-163, 2015 WL 852370, at *1 (W.D. Mich. Feb. 26, 2015) ("Before turning to the substantive issues in this matter, the Court must first address Plaintiff's motion for recusal"). And when the undersigned ruled on plaintiffs' first recusal motion [Doc. 117]

13

plaintiffs immediately filed a notice of appeal,[2] on the same day as the order was issued [Doc. 118]. Accordingly, there has been no unreasonable delay in the undersigned addressing the pending R&Rs in this case. Instead, the delays have been caused by plaintiffs' own motions and appeals.

For all of these reasons, the Court finds that recusal is not warranted, and plaintiffs' second motion for recusal [Doc. 128] is **DENIED**.

## B. R&R on Motion for Preliminary Injunction

In May 2023, plaintiffs filed a motion for an injunction or restraining order against Judge Wright, in which they also ask the Court to find Judge Wright in criminal contempt [Doc. 27]. Specifically, plaintiffs alleged that Judge Wright challenged the authority of this Court in an order dated May 16, 2023, in which he denied a "Motion to Dismiss/Cancel Trial Scheduled for Tomorrow" filed by plaintiff McCurry, stating:

> After careful review, the undersigned saw no reason for delaying the hearing that had been scheduled since May 2. The only real allegation in plaintiff's motion is that the Federal Court lawsuit McCurry has filed against the undersigned is going to be amended by her with approval of the District Court. As has been explained in previous rulings, this lawsuit is of no effect with regard to the undersigned's ability to fairly and impartially preside over Ms. McCurry's cases. The Federal lawsuit is clearly Ms.

---

[2] "As a general rule, the district court loses jurisdiction over an action once a party files a notice of appeal, and jurisdiction transfers to the appellate court." *Lewis v. Alexander*, 987 F.2d 392, 394 (6th Cir. 1993). However, "the district court retains jurisdiction over an action where an appeal is untimely, is an appeal from a non-appealable, non-final order, or raises only issues that were previously ruled upon in that case by the appellate court." *Id.* at 394–95 (internal quotation marks omitted). Although this Court technically retained jurisdiction during the pendency of plaintiffs' appeal, which was from a non-appealable, non-final order denying recusal, in deference to plaintiffs' pro se status, and given that recusal was the subject matter of the appeal, the Court did not issue any orders in this case until the Sixth Circuit dismissed plaintiffs' appeal.

14

McCurry's attempt to obtain a new judge because she is dissatisfied with the rulings, to this point, of the undersigned.

[Doc. 27, pp. 3–4; Doc. 24-22, pp. 1–2]. Plaintiffs further contend that Judge Wright "disrespected" this Court in ordering plaintiff McCurry to provide a copy of her lawsuit filed in Case Number 3:22-cv-380, which is under the jurisdiction of the Sixth Circuit Court of Appeals and had no relevance to the best interests of plaintiff McCurry's son [Doc. 27, p. 4; Doc. 24-20, p. 2].[3] Plaintiffs further reiterated many of the allegations in the amended complaint and argued that plaintiff McCurry was suffering irreparable harm due to the separation from her son [Doc. 27, pp. 8–9]. Plaintiffs specifically asked the Court to "GRANT a Restraining Order or Injunction against all the Orders of Judge Wright issued in all of Agness [sic] cases while this lawsuit is pending" [*Id.* at 9]. The Court referred this motion to Judge Wyrick for an R&R [Doc. 30].

---

[3] The relevant order set the hearing on the Emergency Motion, which was heard in part on February 7, 2023, to be continued on March 24, 2023 [Doc. 24-20]. Within the order, Judge Wright stated:

> At some point during the proceedings on February 7, 2023, attorney Phillips made reference to a Federal Court lawsuit filed by Ms. McCurry against the Tennessee Court of Appeals. Because there are no documents in the record relating to the Federal Court lawsuit, or any appeal therefrom, and because those allegations may be relevant to this Court's determination on Father's Emergency Ex Parte Motion to Suspend Mother's Parenting Time and Motion for a Psychological Evaluation, the parties are DIRECTED to bring copies of any documents filed in Federal Court or any other Courts by Ms. McCurry that may, in any way, relate to the substance or procedure of this case and the appeals that have been taken from this case by Ms. McCurry. At minimum, the Complaint filed in Federal Court and any dispositive order or judgment entered by the U.S. District Court as well as any appellate brief filed by Ms. McCurry and any dispositive order, opinion, or judgment of the Sixth Circuit Court of Appeals should be presented for review by the undersigned at the continued hearing on March 24, 2023.

[*Id.* at 2].

15

### 1.    Summary of R&R

In the R&R, Judge Wyrick recommended that the Court deny plaintiffs' motion [Doc. 67]. As to the request for a preliminary injunction, Judge Wyrick first stated that the Court lacks authority to issue an injunction under the *Rooker-Feldman* doctrine, as a federal district court lacks jurisdiction to reject state court judgments or decrees [*Id.* at 7]. And, even if the Court had jurisdiction over plaintiffs' request for a preliminary injunction, Judge Wyrick found that plaintiffs had not established a "substantial likelihood of success on the merits" [*Id.* at 10]. Judge Wyrick noted that "[w]hile plaintiffs claim that Judge Wright has mistreated them through the state court process by denying them due process, treating them disrespectfully, and improperly incarcerating [Plaintiff] McCurry, the record before the Court tells a different story" [*Id.*]. Judge Wyrick stated that Judge Wright issued an order denying a motion to recuse, setting forth clear, appropriate, and non-prejudicial reasons for having found plaintiff McCurry in contempt [*Id.* at 11]. And, on the other hand, plaintiffs "have provided nothing more than bald assertions in support of their contentions that Judge Wright has deprived them of due process and has ruled against Plaintiff McCurry due to her nationality/status under the VAWA" [*Id.* at 12]. Judge Wyrick further noted that plaintiff McCurry has been turned away on several occasions by both the Tennessee Court of Appeals and Tennessee Supreme Court, and stated that, to grant plaintiffs injunctive relief, the Court would have to assume that the decisions rendered by those courts, apparently upholding Judge Wright's rulings, were incorrect [*Id.* at 15].

16

As to plaintiffs' request for criminal contempt sanctions, Judge Wyrick found that they had not established that Judge Wright disobeyed any order or command of this Court [*Id.* at 16]. To the extent that plaintiffs contend that Judge Wright exhibited disrespect toward this Court, Judge Wyrick found that none of Judge Wright's statements are disrespectful, but simply explain that plaintiff McCurry's filing of a lawsuit against him did not render him unable to fairly and impartially adjudicate cases in which she was a party [*Id.*].

Plaintiffs objected to the R&R [Doc. 68]. Subsequently, Judge Wyrick issued an amended R&R [Doc. 95]. In a footnote, she stated that the amended R&R was substantively identical to the prior document, except that the prior R&R erroneously stated that plaintiffs were suing Judge Wright in his "official" capacity rather than his "individual capacity" [*Id.* at 1, n.1]. The amended R&R corrected this typographical error, but the typographical error did not impact the magistrate judge's analysis or conclusion [*Id.*].

Plaintiffs then filed a motion to strike the amended R&R, arguing that it was obvious on the face of their complaint that they were suing Judge Wright in his individual capacity, and the amended R&R was being filed for an "improper purpose," namely to "harass" plaintiffs and "cause needless increase in delay of final disposition" [Doc. 96, pp. 1–2]. Plaintiffs stated that they did not want to respond to a "frivolous amended report" and asked the Court to remove Judge Wyrick from this case [*Id.* at 2].

17

## 2. Standard of Review[4]

This Court reviews *de novo* those portions of a magistrate judge's report and recommendation to which a party objects, unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Mira*, 806 F.2d at 637 (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## 3. Analysis of Objections and Motion to Strike

Initially, the Court will address plaintiffs' request to strike the amended R&R. Plaintiffs have cited no authority indicating that it is improper for a magistrate judge to submit an amended R&R to correct a typographical error prior to the Court's ruling on the original R&R. And, contrary to plaintiffs' assertion, the amended R&R did not cause any delay in the final disposition of this matter, as the amendment to the R&R simply corrected a typographical error, and therefore, had no impact on this Court's analysis of the substantive issues addressed in the R&R. Similarly, the Court notes that plaintiffs did not, and were not required to, file any amended objections to the amended R&R. Accordingly, the Court finds no error in the magistrate judge's submission of an amended R&R, and plaintiffs' request to strike the amended R&R [Doc. 96] is **DENIED**.

---

[4] The following standard of review applies to each of the R&Rs before the Court. The Court has applied this same standard of review in addressing the R&Rs and objections in sections II.C and II.H, although it does not repeat this case law in those sections.

18

Turning to the substance of the R&R, plaintiffs filed numerous objections which are largely rambling complaints about the alleged actions of Judge Wright and plaintiffs' belief that Judge Wyrick is biased against them [Doc. 68]. To the extent any specific objections can be gleaned from plaintiffs' filing, the Court will address those objections in turn.

First, plaintiffs object that the factual background of Judge Wyrick's R&R "completely eliminates the basis of jurisdiction in this Court: Agness [sic] VAWA" [Doc. 68, p. 2]. It is unclear how plaintiffs believe any discussion of the basis for jurisdiction or the VAWA in the R&R's factual background, would alter the ultimate recommendation on the pending motions. Moreover, plaintiff McCurry's alleged VAWA petition is not the basis for this Court's jurisdiction over this matter. Instead, this Court has jurisdiction under 28 U.S.C. § 1331 because plaintiffs have raised a federal question by suing under federal law, namely 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Accordingly, this objection is **OVERRULED**.

Second, plaintiffs assert that Judge Wyrick overlooked the fact that counsel for Judge Wright failed to timely refile his motion to dismiss after they filed an amended complaint [Doc. 68, p. 2]. But, despite the opportunity to refile such motion, there was no requirement that Judge Wright refile.[5] And, again, it is unclear how this fact would

---

[5] Rule 12 requires that a defendant either answer or file a motion to dismiss "within 21 days after being served with the summons and complaint[.]" Fed. R. Civ. P. 12(a)(1)(A)(i), 12(b). But, as explained *infra*, the Court finds that Judge Wright has not yet been served in his

19

have any impact on the recommendation in the R&R. Therefore, this objection is **OVERRULED**.

Third, plaintiffs contend that Judge Wyrick overlooked significant filings because she did not summarize plaintiffs' motion for sanctions and the order denying this request [Doc. 68, p. 3]. But that motion and order are again irrelevant to the motions at issue in the R&R. And the R&R is not required to summarize all of the procedural history of a particular case, including irrelevant matters. Indeed, to fully summarize all of the procedural history of this case, without regard to its relevance to a particular order, would be a significant endeavor that would unnecessarily waste judicial time and resources. This objection is therefore **OVERRULED**.

Fourth, plaintiffs object that Judge Wyrick stated that plaintiffs sued Judge Wright in his official capacity, when the amended complaint clearly stated that all defendants were sued in their individual capacities [Doc. 68, p. 3]. This objection has been rendered moot by the filing of the amended R&R, which corrects this typographical error [Doc. 95].

Fifth, plaintiffs object to Judge Wyrick's statement that plaintiff McCurry went to trial "to determine the custody of her child" [Doc. 68, p. 4]. Plaintiffs argue that a custody order was in place with plaintiff McCurry having visitation, but Benjamin

_____

individual capacity. Accordingly, this 21-day timeframe has not yet started. Moreover, a defendant is not required to file a motion to dismiss for a case to be properly dismissed for lack of service. *See* Fed. R. Civ. P. 4(m) (stating that "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice" after 90 days elapses and a defendant has not been served).

20

"requested them to be suspended for nefarious reasons" [*Id.*]. The record clearly reflects that the purpose of the Emergency Motion and the subsequent hearing was to determine whether a change should be made to the custody arrangement between plaintiff McCurry and Benjamin. Plaintiffs' objection on this ground is simply mincing words, and is therefore, **OVERRULED**.

Sixth, plaintiffs object that Judge Wyrick claimed to listen to the audio recording of the February 7, 2023, hearing, but ignored the fact that Judge Wright "harassed Agness over the authenticity of her VAWA" [Doc. 68, p. 6]. Plaintiffs further claim that there was no evidence plaintiff McCurry was in contempt of court, beyond Judge Wright's orders which contradict the audio evidence [*Id.* at 22]. Plaintiffs argue that Judge Wright made plaintiff McCurry's opening statement argumentative for no reason but to harass her and then incarcerate her [*Id.*].

This Court has reviewed the audio recordings. The record reflects that plaintiff McCurry was permitted to present seven uninterrupted minutes of opening statement, at which point she proclaimed "that answers any question you might have about this case, just look at the VAWA" [Ex. H at 20:05]. Judge Wright then asked to see a copy of the VAWA [*Id.* at 20:07]. After plaintiff McCurry could not produce a hard copy of the document, Attorney Phillips offered up a copy of a version that had expired in 2019, but plaintiff McCurry claimed there was an approval document [*Id.* at 21:28]. In further conversation about whether an approved VAWA was in the record, plaintiff McCurry began to raise her voice [*Id.* at 26:35], and Judge Wright eventually yelled "STOP

TALKING" [*Id.* at 26:39]. Judge Wright explained that, when he addressed a question to Attorney Phillips, he wanted an answer from Attorney Phillips, not plaintiff McCurry, and he expected plaintiff McCurry not to talk when he was talking [*Id.* at 26:44]. Plaintiff McCurry then accused Judge Wright of being hostile and continued talking while Judge Wright repeatedly stated "stop, stop, stop, stop" [*Id.* at 27:04]. At that point, Judge Wright called a recess and ordered plaintiff McCurry be taken into custody [*Id.* at 27:12]. Nothing about Judge Wright's asking for a copy of plaintiff's VAWA documentation, and then seeking clarification about its status, particularly in light of her opening statement, was "harassing." And, contrary to plaintiffs' assertion, the record is clear that Judge Wright had sufficient grounds to have plaintiff McCurry taken into custody for contempt of court after repeated requests for plaintiff McCurry to stop talking went ignored [*See id.* at 26:35–27:12]. *See In re Brown*, 470 S.W.3d 433, 444 (Tenn. Ct. App. 2015) ("Tennessee courts have held that direct acts of contempt include acts committed in the presence of the court that are disrespectful, unreasonable, or contemptuous; use of violent or loud language or noises; or 'turbulent' conduct that disrupts the proceedings." (internal quotation marks omitted)). Accordingly, the Court finds that the audio recording supports Judge Wyrick's findings, and this objection is **OVERRULED**.

Seventh, plaintiffs allege that Judge Wyrick ignored the Tennessee Rules of Criminal Procedure which require a judge to recuse when a contempt charge relates to disrespect or criticism of a judge [Doc. 68, p. 7]. Plaintiffs appear to argue that Judge

22

Wright was required to recuse himself from plaintiff McCurry's case after holding her in contempt because the contempt charge was based on disrespect to Judge Wright [*Id.*]. Initially, this argument appears to simply be a new claim against Judge Wright not contained in the amended complaint, and therefore, it is not properly raised in plaintiffs' objections to the R&R. Moreover, the rule plaintiffs cite appears inapplicable, as it is a rule of *criminal* procedure, and plaintiffs refer to events occurring in a *civil* proceeding. Accordingly, the objection is **OVERRULED**.

Eighth, plaintiffs argue that Judge Wyrick "minimized the trauma that Plaintiff Etha Jones endured hearing the incarceration of Agness over the phone" because the R&R simply "stated the facts and 'moved on' to her next points" [Doc. 68, p. 8]. It is unclear how plaintiffs believe that "stat[ing] the facts" "minimized" plaintiff Jones's claims, as well as how such supposedly impacted the magistrate judge's recommendation on the motions for preliminary injunction and criminal contempt. To the extent that plaintiffs believe Judge Wyrick should have advocated for plaintiff Jones, such would be inappropriate. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." (internal citations, quotation marks, and alterations omitted)). Accordingly, this objection is **OVERRULED**.

23

Ninth, plaintiffs complain that the R&R states that plaintiff McCurry lost custody of her son as a result of the Emergency Motion in July of 2022, citing page 35 of the amended complaint [Doc. 68, p. 8]. However, plaintiffs argue that the amended complaint did not contain this information on page 35, but instead, stated that the Emergency Motion was filed on September 29, 2022 [*Id.* at 8–9]. Contrary to this assertion, the only reference to July of 2022 in the R&R states:

> In their Amended Complaint, Plaintiffs add claims against Benjamin McCurry, Kelly McCurry, and Sandy Phillips for conspiring to 'unlawfully strip [Plaintiff McCurry] of her parental rights and custody [of] her son," presenting false evidence in an official proceeding, and conspiring to defraud the United States. *Id.* at p. 35. Plaintiffs allege these defendants did so during a trial in front of Judge James Lauderback in July of 2022. *Id.* at p. 39-42.

[Doc. 67, p. 3]. A review of the amended complaint confirms that on page 35, plaintiffs alleged that plaintiff McCurry was seeking damages from Benjamin, Kelly, and Attorney Phillips for "[c]onspiring to unlawfully strip Agness of her parental rights and custody to her son 18 U.S. Code § 241 through the 'Sole Emergency Custody Petition' filed on September 29th, 2022," "[i]ntentionally and maliciously presenting false testimony and evidence in an official proceeding," and "[c]onspiring to defraud the United States 18 U.S.C. § 371 by usurping the authority of the Courts to promote child abuse and strip Agness unlawfully of her parental rights" [Doc. 24, p. 35]. Additionally, beginning on page 39 of the amended complaint, plaintiffs allege facts relating to a "July 14th 2022 trial" before Judge Lauderback [*Id.* at 39 ("Kelly Mccurry suborned perjury for Benjamin Mccurry at the July 14th 2022 trial"); 41 ("Counsel Phillips . . . coached Benjamin and

24

Kelly to provide false testimony regarding their willful contempt of the Parenting Plan and May 6th 2022 Order at the July 14th 2022 trial")]. The Court finds that the R&R's summary of the amended complaint and citations thereto are accurate, and plaintiffs' objection is **OVERRULED**.

Tenth, plaintiffs argue that Judge Wyrick "missed the point" that orders entered by Judges Lauderback, Rice, Street, and Rambo affected the general public in Washington County, because they undermine the public's confidence in the judiciary [Doc. 68, p. 10]. The motion at issue in the R&R was plaintiffs' Motion for Preliminary Injunction and Criminal Contempt Against Judge Thomas Wright [Doc. 27; *see* Doc. 67, p. 1]. It is unclear how any claims plaintiffs may have against Judges Lauderback, Rice, Street, and/or Rambo would affect whether a preliminary injunction should be issued against Judge Wright, and whether the Court should find Judge Wright in criminal contempt. This objection is therefore **OVERRULED**.

Eleventh, plaintiffs allege that the R&R is proof that Judge Wyrick is in a conspiracy with the state defendants to unlawfully incarcerate plaintiff McCurry [Doc. 68, p. 12]. To the extent that plaintiffs seek to raise claims against Judge Wyrick for allegedly conspiring against plaintiff McCurry, such claims are more appropriately raised in a new complaint.[6] The objection is **OVERRULED**.

---

[6] The Court notes that plaintiff McCurry has already filed a civil complaint in this district raising claims against Judge Wyrick related to her rulings in this matter, which remains pending. *See* Case No. 2:23-cv-130-DCLC-JEM.

Twelfth, plaintiffs claim that Judge Wyrick incorrectly determined that their motion for an injunction asked the Court to reverse a state judge's orders in a pending state case [Doc. 68, p. 13]. Plaintiffs state this is "100% false" and instead they "request injunctive relief from all the unconstitutional Orders entered by Judge Wright that are clearly treasonous and violate federal law." Plaintiffs contend that injunctive relief is available to them under *Ex Parte Young*, 209 U.S. 123, 155–56 (1908) [*Id.*]. Once again, plaintiffs' objection merely minces words. However worded, plaintiffs' ultimate request in their motion for a preliminary injunction is to reverse and/or enjoin execution of Judge Wright's orders in plaintiff McCurry's state court proceedings. Further, plaintiffs' reliance on *Ex Parte Young* is misplaced. In that case, the Supreme Court held that individuals who are tasked with enforcing state laws, and who threaten and are about to commence proceedings to enforce an unconstitutional law, may be enjoined by a federal court from engaging in such action. 209 U.S. at 155–56. But in the instant case, plaintiffs do not allege there is any unconstitutional law threatened to be enforced against them—rather, they allege that the actions of various individuals during state court proceedings were unconstitutional. This distinction renders *Ex Parte Young* inapplicable. And even if *Ex Parte Young* stood for the proposition that injunctive relief could be available under these circumstances, as the R&R correctly states, plaintiffs have not established that injunctive relief is appropriate under the specific facts of this case. This objection is **OVERRULED**.

26

Thirteenth, plaintiffs summarily allege that Judge Wyrick misapplied the *Rooker-Feldman* doctrine [Doc. 68, p. 15]. It appears that this objection ties to plaintiffs' prior objection regarding the relief they seek, as Judge Wyrick held that, because plaintiffs seek to enjoin enforcement of all orders entered by Judge Wright in the state court actions, granting the requested relief "would necessarily be interfering with the 'day-to-day conduct of state hearings and trials.'" [Doc. 67, p. 8]. As noted *supra*, plaintiffs' attempts to recharacterize the relief they seek with regard to Judge Wright's orders is merely mincing words. And plaintiffs provide no argument as to how Judge Wyrick's application of the *Rooker-Feldman* doctrine was erroneous. Accordingly, this objection is **OVERRULED**.

Fourteenth, plaintiffs contend that Judge Wyrick ignored the federal lawsuit plaintiff McCurry has against the Tennessee Court of Appeals by relying on that court's dismissal of plaintiff McCurry's appeals [Doc. 68, p. 15]. In the R&R, Judge Wyrick stated:

> Additionally, the Court cannot overlook the fact that Plaintiff McCurry has been turned away on several occasions by the Tennessee Court of Appeals and on at least two by the Tennessee Supreme Court. To grant Plaintiffs the injunctive relief they seek, this Court would have to assume that the decisions rendered by those courts, which apparently upheld Judge Wright's rulings and/or refusal to recuse, were incorrect.

[Doc. 67, p. 15]. Plaintiffs appear to refer to the lawsuit plaintiff McCurry filed against the Tennessee Court of Appeals, challenging the handling of her appeal(s) in her divorce/custody case [*See* Case No. 3:22-cv-380]. That case is now pending appeal before the Sixth Circuit, after another district judge dismissed the case without prejudice

27

[*Id.*, Docs. 15, 32]. Ultimately, Judge Wyrick was not required to give deference to plaintiffs' allegations regarding the Tennessee Court of Appeals which have been dismissed by the district court. And, notably, even if Judge Wyrick had ignored prior Tennessee Court of Appeals decisions in light of plaintiff McCurry's pending appeal, this would have no bearing on the prior decisions of the Tennessee Supreme Court, which Judge Wyrick also cited. Further, this statement in the R&R amounts to dicta that does not impact the ultimate recommendation on the motions for a preliminary injunction and criminal contempt. Accordingly, this objection is **OVERRULED**.

Fifteenth, plaintiffs claim that Judge Wyrick's R&R violates the abstention doctrine because it permits defendants to continue with the ongoing state court proceedings while this federal case is pending [Doc. 68, p. 16]. But the "*Younger* abstention [doctrine] derives from a desire to prevent *federal* courts from interfering with the functions of *state* criminal prosecutions[.]" *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) (emphasis added). In other words, *Younger* warrants abstention by the federal court in certain circumstances. It does not give the federal court authority to order the state courts to dismiss or hold in abeyance their proceedings. Accordingly, this objection is **OVERRULED**.

Sixteenth, plaintiffs claim that, like Judge Wright, Judge Wyrick has refused to accept the authority of the United States government regarding plaintiff McCurry's VAWA [Doc. 68, p. 23]. But, as discussed *supra*, the existence of plaintiff's alleged VAWA has no impact on the magistrate judge's recommendation, or this Court's order,

28

on the motion for preliminary hearing and criminal contempt at issue. The objection is **OVERRULED**.

Seventeenth, plaintiffs argue that the magistrate judge failed to review the disparaging remarks made by Judge Wright [Doc. 68, p. 25]. Specifically, plaintiffs contend that Judge Wright made disparaging remarks about the United States government in his April 26, 2023, order challenging United States Customs and Immigration Services's ("USCIS") approval of plaintiff McCurry's VAWA [*Id.* at 25]. Additionally, he made disparaging remarks that the amended complaint in this action had "no effect" on him [*Id.* at 25–26].

Plaintiffs' first claim of disparaging remarks references Judge Wright's order granting the Emergency Petition, wherein he discussed plaintiff McCurry's reliance on her alleged VAWA [Doc. 24-19, pp. 12–15]. Specifically, Judge Wright explained that plaintiff McCurry's self-petition under the VAWA with USCIS and her resulting adjustment of immigration status was irrelevant to the custody dispute, as the proceeding involved plaintiff McCurry and USCIS, and did not involve Benjamin, and therefore, no determination in that proceeding would be *res judicata* [*Id.* at 13–14]. Judge Wright went on to conclude that the evidence presented indicated that plaintiff McCurry, not Benjamin, was abusive [*Id.* at 15]. Nothing in Judge Wright's order addressing plaintiff McCurry's alleged VAWA is "disparaging" about the United States government. Judge Wright simply explained how the VAWA procedure rendered it inapplicable to the custody dispute before him and then made findings based on the evidence presented

29

before him, rather than relying on plaintiff McCurry's alleged VAWA. And, as Judge Wyrick thoroughly explained [Doc. 67, p. 16], even if this statement could somehow be construed as disparaging to the United States government, *it does not violate an order of this Court*, and therefore, contempt is not warranted.

Plaintiffs also point to Judge Wright's order denying plaintiff McCurry's motion to cancel the hearing on the motion to dismiss in the Briggs action, in which he states:

> The only real allegation in plaintiff's motion is that the Federal Court lawsuit McCurry has filed against the undersigned is going to be amended by her with approval of the District Court. As has been explained in previous rulings, this lawsuit **is of no effect** with regard to the undersigned's ability to fairly and impartially preside over Ms. McCurry's cases. The Federal lawsuit is clearly Ms. McCurry's attempt to obtain a new judge because she is dissatisfied with the rulings, to this point, of the undersigned.

[Doc. 24-22, pp. 1–2 (emphasis added)]. Plaintiffs attempt to take a portion of the quote, that the "lawsuit is of no effect," out of context, excluding the next phrase "with regard to the undersigned's ability to fairly and impartially preside" over the case. Judge Wright's statement is not disparaging of this Court or the federal government; it merely explains why, as the undersigned has also previously explained, recusal is not warranted solely on the basis that the litigant filed a lawsuit against the presiding judge. And, once again, even if the Court were somehow to construe Judge Wright's comment as disparaging, it does not violate an order of this Court, and therefore, is not a ground for contempt. This objection is **OVERRULED**.

### 4. Conclusion

For these reasons, plaintiffs' objections [Doc. 68] are **OVERRULED** and plaintiffs' request to strike the amended R&R [Doc. 96] is **DENIED**. The R&R [Doc. 67 (as amended by Doc. 95)] is **ACCEPTED** and **ADOPTED IN WHOLE** and incorporated into this memorandum opinion. Plaintiffs' motion for a preliminary injunction and contempt [Doc. 27] is **DENIED**.

### C. R&R on Criminal Contempt

On July 26, 2023, plaintiffs filed a second motion for criminal contempt against Judge Wright [Doc. 90], alleging that Judge Wright had violated this Court's scheduling order by initiating proceedings in plaintiff McCurry's divorce and child custody case, as well as her state criminal case.

Subsequently, on August 17, 2023, plaintiffs filed a motion for final judgment on outstanding motions for criminal contempt against Judge Wright due to "new evidence" [Doc. 101]. Plaintiffs stated that they had recently discovered that Judge Wright never swore an oath of office as required by the Tennessee Constitution [*Id.* at 1]. Plaintiffs argued that Judge Wright therefore operated unconstitutionally and unlawfully and caused injury to plaintiff McCurry and her minor son [*Id.* at 2].

### 1. Summary of R&R

Judge Wyrick recommended that the Court deny these motions [Doc. 102]. First, to the extent that plaintiffs ask the Court to find that Judge Wright's arguments in response are barred by judicial estoppel because he takes inconsistent positions, Judge

31

Wyrick noted that Judge Wright simply provided alternate grounds for denying the requested relief, which he is permitted to do by law [*Id.* at 4–5]. Further, to the extent that plaintiffs argue that Judge Wright should not be permitted to file a response because he was engaged in a RICO conspiracy, Judge Wyrick found that plaintiffs had provided no legal support for this argument, and therefore, it was waived [*Id.* at 5].

Turning to the merits of the motion, Judge Wyrick concluded that plaintiffs had not presented facts showing that Judge Wright had disobeyed this Court's lawful writ, process, order, rule, decree, or command [*Id.* at 6]. First, Judge Wright could not have violated the scheduling order through any actions in the state court proceeding because those proceedings have no bearing on the deadlines and filing requirements set out in the scheduling order nor does the scheduling order govern the schedule for state proceedings [*Id.* at 6–7]. Moreover, Judge Wright did not violate any order of the Court by failing to file a renewed motion to dismiss, because, while he was permitted to do so, he was not required to do so [*Id.* at 7].

As to plaintiffs' claims that Judge Wright initiated proceedings against plaintiff McCurry in retaliation for filing the instant action, Judge Wyrick noted that Judge Wright did not initiate the underlying criminal proceedings against plaintiff McCurry in the case out of which she has now been cited for criminal contempt [*Id.*]. Accordingly, through plaintiffs' own filings, the record demonstrates that Judge Wright was properly designated to hear the criminal case [*Id.* at 8]. And, even if he had not been properly

32

appointed to hear the criminal case, that would not constitute criminal contempt, because it would not violate any order entered by this Court in this action [*Id.*].

Finally, as to plaintiffs' arguments regarding Judge Wright's oath of office, Judge Wyrick stated that, while the Office of the Tennessee Secretary of State makes available certain oaths of office for easy access by the public, the oaths of office for senior judges in Tennessee are not among them [*Id.* at 8–9]. However, the Tennessee Administrative Office of the Courts was able to provide a copy of Judge Wright's oath, which Judge Wyrick attached as Exhibit A to the R&R and took judicial notice of [*Id.* at 9]. Given that the document reflects that Judge Wright timely took the required oath of office, Judge Wyrick concluded that plaintiffs' claim was without merit. And, even if Judge Wright presided over plaintiff McCurry's case without taking an oath, such would not constitute criminal contempt of the orders of this Court [*Id.*].

## 2. Analysis of Objections

Plaintiffs filed several objections to the R&R [Doc. 104]. First, plaintiffs argue that Judge Wright was required to take the oath of office and file it with the Tennessee Secretary of State under Tennessee Code Annotated §§ 8-18-108 and 8-18-113 [*Id.* at 1]. Plaintiffs take issue with Judge Wyrick's statement that senior judge oaths cannot be found on the Tennessee Secretary of State's website, arguing that the website itself states that "[n]ewer state oaths" could be found on the website [*Id.* at 3]. While the Secretary of State's website lists the Administrative Office of the Courts ("AOC") as a potential source for records of oaths, "the AOC must make sure that the oaths were properly

33

administered before they file them" [*Id.*]. According to plaintiffs, the oath provided to Judge Wyrick by the Administrative Office of the Courts is fraudulent because it lists "Douglas T. Jenkins" as the administrator of the oath but does not provide Jenkins's title [*Id.* at 3–4]. Plaintiffs state that they believe Rachel Harmon, the deputy director of the AOC, sent a fraudulent oath to Judge Wyrick to help Judge Wright, because the two are friends [*Id.* at 4–5].

Regarding judicial oaths of office, Tennessee law states:

(a) In all cases in which it is not otherwise provided by law, the oaths of office may be administered by any officer authorized to administer an oath. Such oaths shall be written out and subscribed by the person taking them, and shall be accompanied with the certificate of the officer administering the oaths, specifying the day and year when taken.

(b) The governor or an active or retired supreme court justice may administer the oath to a supreme court justice. The governor, an active or retired supreme court justice, an active or retired inferior court judge, or an active or retired general sessions judge may administer the oath to an inferior court judge. Except as otherwise provided by law, the governor, an active or retired supreme court justice, an active or retired inferior court judge, or an active or retired general sessions judge may administer the oath to any elected or appointed official.

Tenn. Code Ann. § 8-18-107. It further states that:

Such oaths shall, when taken by the governor, a judge of the supreme court, a judge of the circuit court, a chancellor, the secretary of state, the comptroller of the treasury, the state treasurer, a district attorney general, or any other officer whose duties are not limited to one (1) county, unless it is otherwise provided, by filed, with the certificate required by § 8-18-107, in the office of the secretary of state.

34

Tenn. Code Ann. § 8-18-108. Additionally, "[a]ny officer . . . required by law to take and file such oaths, who enters upon the duties of the office without first taking and filing the same as prescribed, commits a Class C misdemeanor." Tenn. Code. Ann. § 8-18-113.

Plaintiffs' contention that Judge Wright was required to take an oath and file it with the secretary of state does not appear to be in dispute. The dispute is whether Judge Wright complied with that requirement. Plaintiffs appear to contend that Judge Wright's oath, a copy of which was attached to the R&R [Doc. 102-1], was not properly filed with the secretary of state as required by § 8-18-108. But the basis for this argument is that Judge Wright's oath upon taking the office of senior judge was not located on the Tennessee Secretary of State's public database of oaths of office. And nothing in the Tennessee Code requires that judicial oaths of office be published on the secretary of state's website. Plaintiffs' assertion that Judge Wright's oath was not filed properly with the secretary of state is merely speculation.

Moreover, as to plaintiffs' claim that the oath of office attached to the R&R is invalid because it does not contain the title of the individual who administered the oath, the Court first notes that this is a new argument not previously raised, and therefore, is not appropriately raised in plaintiffs' objections. *See Meddaugh v. Gateway Fin. Serv.*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022) ("Parties cannot raise at the district court stage new arguments or issues that were not presented before the magistrate judge's final R&R" (internal quotation marks and alterations omitted)). Regardless, the Tennessee Code contains no requirement that the title of the official administering the oath of office

35

be included on the written oath. And the Court takes judicial notice that Douglas T. Jenkins is currently a chancellor in the Third Judicial District Chancery Court. *See* www.tncourts.gov/courts/circuit-criminal-chancery-courts/judges/douglas-t-jenkins (last accessed Feb. 12, 2024). Furthermore, plaintiffs' argument that Harmon created a fraudulent oath to provide Judge Wyrick is speculation. For these reasons, plaintiffs' objection is **OVERRULED**.

Plaintiffs also state that it is "unacceptable" for Judge Wyrick to say that Judge Wright should be permitted to preside over plaintiff McCurry's case without taking his oath of office [Doc. 104, p. 7]. Plaintiffs contend that the Court must order incarceration of Judge Wright because he acted as a senior judge and disrespected the authority of the district court without his mandatory oath [*Id.* at 8]. Plaintiffs further argue that Judge Wright is guilty of treason because he violated 28 U.S.C. § 453 by acting without an oath of office [*Id.* at 9].

As to plaintiffs' claim that Judge Wyrick found it permissible for Judge Wright to preside without a valid oath of office, Judge Wyrick stated no such thing. Instead, Judge Wyrick stated that *even if* Judge Wright did not have a valid oath of office, such would not constitute contempt of *this Court's orders* [Doc. 102, p. 9]. Judge Wyrick's recommendation in that regard is entirely accurate. Even if Judge Wright had acted without a valid oath of office, that action is not in direct defiance of any of this Court's orders. Perhaps, if proven, it would entitle plaintiffs to other relief in another venue. But it does not warrant an order of contempt in this case. Moreover, to the extent plaintiffs

36

allege that Judge Wright's actions amounted to treason, again, even if Judge Wright acted without a valid oath of office, plaintiffs could not seek relief under a criminal statute. *See Clark v. Williams*, No. 2:23-cv-4201, 2024 WL 278171, at *2 (S.D. Ohio Jan. 25, 2024) ("As a private citizen, Plaintiff cannot sue anyone criminally"). Accordingly, plaintiffs' objections are **OVERRULED**.

Further, plaintiffs argue that the R&R should be rejected because Judge Wright is guilty of treason and engaged in a RICO criminal conspiracy to abuse a minor child, incarcerate plaintiff McCurry, and terminate her parental rights [Doc. 104, p. 9]. Plaintiffs state that Judge Wright initiated criminal contempt proceedings against plaintiff McCurry for showing his corruption in the divorce/custody case, which is evidence of a RICO conspiracy [*Id.* at 10–11]. Plaintiffs further contend that Judge Wright is guilty of a Class D misdemeanor for child abuse for his April 26, 2023, order depriving the child of seeing his mother [*Id.* at 12–13].

This objection consists of conclusory reiterations of the allegations in the amended complaint without further evidence. Because they are simply conclusory statements, they are insufficient to support a claim that an order of contempt should be issued. And, even if these allegations were true, they would not warrant an order of contempt, as they do not violate *an order of this Court*. Accordingly, this objection is **OVERRULED**.

### 3. Conclusion

For these reasons, plaintiffs' objections [Doc. 104] are **OVERRULED**. The R&R [Doc. 102] is **ACCEPTED** and **ADOPTED IN WHOLE** and incorporated into this

37

memorandum opinion. Accordingly, plaintiffs' second motion for criminal contempt [Doc. 90] and motion for final judgment on criminal contempt [Doc. 101] are **DENIED**.

### D. Motion to Set Aside Denial of Sanctions

The Court now turns to plaintiffs' "Motion to Vacate/Set Aside Doc 18 Order Denying Motion for Sanctions Against the State of Tennessee Pursuant to FRCP 60" [Doc. 33].

As background, on March 20, 2023, plaintiffs filed a Motion for Sanctions Against Counsel for the State of Tennessee [Doc. 11]. Plaintiffs alleged that the State allowed Attorney Eric William Donica, who they allege is a law clerk for Judge W. Neal McBrayer, to represent Judge Wright [*Id.* at 1]. Plaintiffs submitted an affidavit in support, asserting that they called the State on March 17, 2023, and were informed that the State had received the summons and complaint, and it had been assigned to an attorney with the last name Donica [*Id.* at 4–5]. Plaintiffs stated that they then conducted a Google search for an attorney with the last name Donica and discovered that Attorney Donica is a law clerk for Judge McBrayer [*Id.* at 5]. Plaintiffs stated that they did "not understand why the State of Tennessee ha[s] submitted the lawsuit and summons to a law clerk who isn't a registered attorney with their office" and "[t]he actions of the State of Tennessee are misconduct and fraud upon the tribunal which are grounds for sanctions" [*Id.* at 5–6].

Judge Wright, through counsel, responded that Attorney Donica has been a licensed attorney in Tennessee since January 15, 2021, and, while he clerked for Judge

38

McBrayer until August 2022, he has worked at the Tennessee Attorney General's Office since September 2022 [Doc. 17, p. 1]. Attorney Donica was originally assigned to represent Judge Wright in this case, but the case was subsequently reassigned to Senior Assistant Attorney General Joe Ahillen, because Attorney Donica's application for admission to the Eastern District of Tennessee was pending [*Id.* at 1–2]. Moreover, Judge Wright noted that Attorney Donica never filed any documents in this case [*Id.* at 2]. Therefore, Judge Wright argued that plaintiffs' motion was both legally and factually incorrect and should be denied [*Id.*]. Judge Wright attached an affidavit from Attorney Donica confirming these facts [Doc. 17-1].

On April 6, 2023, Judge Wyrick denied plaintiffs' motion for sanctions [Doc. 18]. Judge Wyrick found that plaintiffs had not demonstrated that Attorney Donica made a false statement or improper representation to the Court in this matter and could not do so as Attorney Donica did not make an appearance in this matter [*Id.* at 2].

More than two months later, on June 13, 2023, plaintiffs filed a "Motion to Vacate/Set Aside Doc 18 Order Denying Motion for Sanctions Against the State of Tennessee Pursuant to FRCP 60" [Doc. 33]. Specifically, plaintiffs sought relief under Rule 60(b)(2), (b)(3), or (b)(6) [*Id.* at 1]. Plaintiffs assert that Attorney Ahillen should be sanctioned for "tolerating and representing Judge Wright" which is "fraud on the Court and newly discovered evidence" [*Id.* at 2]. Plaintiffs again claim that Judge Wright made "disrespectful and disparaging remarks about the authority of this Court" by ruling that the instant lawsuit had no effect on his ability to fairly and impartially preside over

39

plaintiff McCurry's domestic relations case [*Id.* at 6]. Plaintiffs further take issue with the fact that Attorney Donica's LinkedIn profile did not list the State of Tennessee as his employer and that an employee of the State of Tennessee "engaged in unprofessional behavior of hanging up on Agness and Ms. Jones when they pressed for more information on Mr. Donica" [*Id.* at 4]. Finally, plaintiffs suggest that, if they had not filed their motion for sanctions, the State would have allowed Attorney Donica to appear on behalf of Judge Wright "[k]nowing that his application was pending in the Eastern District" and therefore the State "contemplated to commit fraud upon the tribunal" [*Id.* at 4–5].

First, although plaintiffs label their motion as seeking relief under Rule 60(b), the Court finds that the motion is most appropriately construed as an appeal of Judge Wyrick's order denying sanctions. Rule 72 of the Federal Rules of Civil Procedures states that "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to the magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). At that point "[a] party may serve and file objections to the order within 14 days after being served with a copy" but "[a] party may not assign as error a defect in the order not timely objected to." *Id.* Plaintiffs' motion is clearly untimely under Rule 72, as they did not file their appeal of Judge Wyrick's order within 14 days.

40

Nonetheless, even if plaintiffs' motion was timely under Rule 72, they are not entitled to relief. That rule permits the district judge to "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or contrary to law." *Id.* Nothing about Judge Wyrick's denial of sanctions in this matter is clearly erroneous or contrary to law. Rule 11(c) permits a party to move for sanctions against any attorney, law firm, or party that has violated Rule 11(b) or is responsible for the violation. Fed. R. Civ. P. 11(c)(1). Rule 11(b) states that, by presenting a pleading or other paper to the Court, an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

But, of particular note, each section of Rule 11 relates to representations that an attorney makes before this Court. And none of the complaints that plaintiffs raise in their appeal of Judge Wyrick's denial of sanctions involve pleadings or papers filed by defendants in this case. First, even assuming that some unidentified individual working

41

for the Attorney General's office hung up the phone on plaintiffs, such is wholly unrelated to any parties' representations before this Court. Additionally, there are no legal requirements that an individual utilizing a social media account such as LinkedIn keep their profile on such updated with their current employment information, and plaintiffs' dissatisfaction with the information they found on a private individual's LinkedIn page is entirely irrelevant to this proceeding.

To the extent that plaintiffs appear to claim that the State of Tennessee sought to perpetrate a fraud on the court by permitting Attorney Donica to represent Judge Wright in this matter, despite not being admitted to practice in the Eastern District of Tennessee at that time, until they filed their motion bringing this matter to light, such is pure speculation. Moreover, plaintiffs' speculative situation in which Judge Wright would have been represented by an attorney not admitted to this district is not possible. An attorney not admitted to this district or not admitted pro hac vice would not be permitted to register as an e-filer and file pleadings in the Court's electronic case management system. *See* E.D. Tenn. ECF Rules and Procedures, Rule 5.

Finally, to the extent plaintiffs allege that Judge Wright made disparaging statements about this Court, as discussed *supra*, the Court finds that nothing about these comments is disrespectful or disparaging of this Court, nor do these statements violate any order of this Court.

Accordingly, plaintiffs' "Motion to Vacate/Set Aside Doc 18 Order Denying Motion for Sanctions Against the State of Tennessee Pursuant to FRCP 60" [Doc. 33] is **DENIED**.

### E.    Motion Objecting to Extension of Time to Answer

The Court will now turn to plaintiffs' "Motion for Leave for District Court Judge to Review Magistrates [sic] Order Granting Extension of Time Doc 43 to Defendants Amy Briggs and Judge Jonathan Minga" [Doc. 45].

On June 13, 2023, defendants Briggs and Judge Minga filed a motion for an extension of time to answer plaintiffs' amended complaint [Doc. 35].

Plaintiffs opposed the motion, alleging that all defendants had engaged in another conspiracy to unlawfully incarcerate plaintiff McCurry, and therefore, Briggs and Judge Minga's responses should be barred by judicial estoppel, equitable estoppel, and the doctrine of unclean hands [Doc. 36, p. 1].

Briggs and Judge Minga replied that their counsel was only retained on June 9, 2023, and needed time to familiarize himself with the case [Doc. 37, p. 1].

In an unauthorized sur-reply brief, plaintiffs argued that Briggs and Judge Minga's counsel, Arthur Knight, filed his initial motion for an extension without any justifiable reasons stated therein [Doc. 38, p. 1].  Plaintiffs argued that the initial motion failed to comply with Local Rule 7.1 as it was not accompanied by an "opening brief," "affidavit," or "other supporting materials" [*Id.* at 2].  Plaintiffs stated that Briggs and Judge Minga received the amended complaint on May 30, 2023, and Attorney Knight's failure to

43

include this information is an attempt to deceive the Court [*Id.*]. Plaintiffs also contended that counsel's lack of familiarity with the lawsuit "is not justifiable grounds to receive an extension," arguing that "ignorance of the law or lack of knowledge . . . does not justify . . . [the] motion for an extension of time" [*Id.* at 3–4].

Judge Wyrick granted Briggs and Judge Minga's motion for an extension of time to answer [Doc. 43]. Judge Wyrick noted that none of the doctrines cited by plaintiffs prevent a defendant from being able to respond to a complaint filed against him or her [*Id.* at 1]. Judge Wyrick also declined to consider plaintiffs' sur-reply as it was improperly filed without leave of court [*Id.* at 1–2]. Judge Wyrick found that Judge Minga and Briggs stated sufficient grounds to warrant an extension and that the extension was not requested for the purpose of delay, and therefore, granted an extension up to July 17, 2023, to respond to the amended complaint [*Id.* at 2].

Plaintiffs then filed the instant motion [Doc. 45]. Plaintiffs argue that Attorney Knight's motion failed to satisfy the Local Rules as it was not accompanied by an "opening brief and any accompanying affidavits" [*Id.* at 1]. Plaintiffs also restated that defendants' responses should be barred by judicial estoppel, equitable estoppel, and the doctrine of unclean hands, because they are part of an ongoing criminal conspiracy [*Id.* at 1–2]. Plaintiffs contend that their unauthorized sur-reply should be considered because Attorney Knight failed to attach justifiable reasons to his initial motion for an extension [*Id.* at 3].

44

Even considering the unauthorized sur-reply brief, plaintiffs have not shown that Judge Wyrick's order granting an extension of time to answer was clearly erroneous or contrary to law. Although the motion for an extension of time did not set forth specific grounds supporting the requested extension, these grounds were ultimately set forth in the reply brief. And Rule 6(b)(1) does not even require that a motion be filed by a party if the Court finds good cause for an extension of time. *See* Fed. R. Civ. P. 6(b)(1) (permitting a court to extend a deadline "for good cause . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires"). Accordingly, the Court will not overturn Judge Wyrick's order on such a technicality, especially when both parties committed technical errors in the briefing of this motion (defendants in not setting forth the specific grounds for the requested relief in the initial motion and plaintiffs in filing a sur-reply without leave of court).

Next, as Judge Wyrick explained, the doctrines of judicial estoppel, equitable estoppel, and unclean hands are entirely inapplicable here [Doc. 43, p. 1]. And plaintiffs have presented no argument as to why Judge Wyrick's analysis of these doctrines was clearly erroneous or contrary to law.

Finally, even if plaintiffs raised valid arguments in opposition to the request for an extension of time to answer, the Court notes the strong preference for adjudications of matters on the merits, after both sides have had opportunity to present their case. *See Mann v. Mohr*, 802 F. App'x 871, 877 (6th Cir. 2020) ("[I]f the district court had denied leave to file the tardy answer and default had entered instead, defendants almost certainly

45

would have been entitled to have the default set aside, given their facially meritorious defense and the strong policy favoring adjudication on the merits." (quotation marks omitted)); *Rose v. Social Security Administration*, 202 F.3d 270 (table), No. 98-6491, 1999 WL 1253074, at *1 (6th Cir. Dec. 17, 1999) ("[T]his court prefers that claims be adjudicated on their merits."); *Coburn v. L.J. Ross Associates, Inc.*, No. 14-CV-11080, 2015 WL 1926398, at *4 (E.D. Mich. April 28, 2015) ("There is a strong preference for adjudicating cases on the merits rather than on a failure to timely file answers to requests for admissions."). Accordingly, the Court finds that Judge Wyrick's grant of an extension of time was not clearly erroneous or contrary to law. Therefore, plaintiffs' motion [Doc. 45] is **DENIED**.

### F. Objection to Magistrate Judge's Order Denying Motion Barring Defendants from Seeking Relief

On June 16, 2023, plaintiffs filed a "Motion to Bar Defendants Senior Judge Thomas Wright, Counsel Sandy Phillips, Benjamin McCurry and Kelly McCurry From Seeking Any Form Of Relief From This Court Due to Continued Litigation Misconduct, Conspiracy to Violate Federal And State Law and Fraud" [Doc. 40]. Plaintiffs appear to allege that Attorney Phillips, Benjamin, and Kelly are committing fraud because, while Benjamin and Kelly are purportedly proceeding pro se, Attorney Phillips is assisting them in preparing motions [*Id.* at 8]. They contend that the same thing occurred in the state court and Judge Wright ignored the issue [*Id.*]. Plaintiffs appear to allege that these defendants should therefore be prohibited from seeking any relief in this action under the doctrine of equitable estoppel [*Id.* at 10].

46

Judge Wyrick denied the motion [Doc. 87]. Judge Wyrick noted that, while plaintiffs cite generally to the equitable principle of estoppel, they have provided no specific examples that are applicable [*Id.* at 1]. And, even if the Court refused to consider defendants' motions to dismiss, the Court may still dismiss an action if it determines that a plaintiff has failed to state a claim upon which relief may be granted [*Id.* at 1–2]. Therefore, Judge Wyrick found that the motions to dismiss, and plaintiffs' responses thereto, would be considered pursuant to applicable law [*Id.* at 2].

Plaintiffs objected, arguing that Judge Wyrick had violated the Local Rules multiple times and "encouraged litigation misconduct" [Doc. 89, p. 1]. Plaintiffs appear to assert that Judge Wyrick's order was not timely, citing to Local Rule 7.2, which states that "[m]otions will be disposed of routinely as soon as possible after they become at issue" [*Id.* at 2]. Plaintiffs further contend that Judge Wyrick is biased because she previously stated that plaintiffs "won't prevail on the merits" [*Id.* at 3 (citing Doc. 67, p. 15)]. Plaintiffs ask that Judge Wyrick's order be vacated due to "misconduct" [*Id.* at 4].

Plaintiffs have not shown that Judge Wyrick's denial of their motion was clearly erroneous or contrary to law. Plaintiffs largely devote the instant motion to leveling vague and inaccurate allegations that Judge Wyrick has engaged in misconduct.

Plaintiffs argue that Judge Wyrick violated Local Rule 7.2 because her order was not "timely," but Judge Wyrick issued her order on July 26, 2023 [Doc. 87] after the motion became ripe on June 30, 2023. *See* E.D. Tenn. L.R. 7.1(a) (permitting 14 days to respond to a non-dispositive motion). And during that 26-day timeframe, Judge Wyrick

47

issued an R&R [Doc. 67] and 4 other orders [Docs. 76, 77, 79, 88] in this case. Contrary to plaintiffs' opinions, the Court must devote time to other pending matters besides this case. Judge Wyrick's 26-day period to address the motion once it became ripe was imminently reasonable, especially considering that, of those 26 days, 8 were weekends, and 1 was a federal holiday, leaving only 17 business days between the motion becoming ripe and Judge Wyrick issuing her order.

As to plaintiffs' claim that Judge Wyrick displayed bias by stating they "won't prevail on the merits," what Judge Wyrick actually stated was, at that juncture "Plaintiffs simply have not demonstrated any likelihood of success on the merits" [Doc. 67, p. 15]. And, far from expressing bias, Judge Wyrick made this statement in the course of issuing her R&R on plaintiffs' request for a preliminary injunction. To obtain such relief, a plaintiff is required to show, among other things, "a substantial likelihood or probability of success on the merits of [their] claim." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) (internal quotation marks omitted). Thus, rather than displaying bias, Judge Wyrick's statement in the R&R is simply an example of her diligent and legally sound analysis of plaintiffs' request for a preliminary injunction.

Accordingly, plaintiffs have not shown that Judge Wyrick's denial of this motion was clearly erroneous or contrary to law, and their appeal motion [Doc. 89] is **DENIED**.

48

## G. Motion for Preliminary Injunction against Judge Lauderback's Joint Preliminary Restraining Order

Plaintiffs move for a preliminary injunction against the July 14, 2022, joint mutual restraining order entered by Judge Lauderback [Doc. 106].[7]  Plaintiffs argue that this order "was entered without the consent or testimony of Agness which is a Due Process violation" [*Id.* at 1].  Plaintiffs appear to contend that Judge Lauderback abused his discretion by ignoring plaintiff McCurry's VAWA [*Id.* at 3].  Plaintiffs state that plaintiff McCurry attempted to seek relief regarding Judge Lauderback's joint mutual restraining order, but the Court of Appeals judges "harassed" her at oral argument [*Id.* at 4].

Plaintiffs contend that they "will prevail on the merits because the case is set for jury trial in August 2024" [*Id.* at 7].  And they argue that the public will be served by entry of an injunction "because it will expose the RICO criminal conspiracy" [*Id.*].  Plaintiffs allege that the Department of Children's Services ("DCS") will not ensure the safety of plaintiff McCurry's son "due to the various Orders by Defendant Judge Lauderback" [*Id.* at 7–8].  Plaintiffs claim that plaintiff McCurry will suffer irreparable damage if the Court does not issue an injunction because "[t]here is a new criminal conspiracy that is at work involving DCS to terminate Agness [sic] parental rights on false allegations of 'abandonment' and 'non-compliance'" [*Id.* at 9].

---

[7] The vast majority of this motion is spent reiterating plaintiffs' prior allegations about a conspiracy, plaintiff McCurry's mental health, VAWA, etc., and does not actually address Judge Lauderback's order or why its enforcement should be enjoined [*See* Doc. 106].  However, the Court has summarized above the arguments relating to the relevant order, to the extent possible.

49

Under Federal Rule of Civil Procedure 65, a party may seek injunctive relief if it believes it will suffer irreparable harm or injury during the pendency of the action. *See* Fed. R. Civ. P. 65. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant a plaintiff's request for a preliminary injunction, the Court must consider four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Id*. Although courts are to balance each of these factors in making their determination, "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (internal quotation marks omitted).

Here, the Court finds that plaintiffs have not established that a preliminary injunction against enforcement of Judge Lauderback's joint mutual restraining order is warranted. First, plaintiffs have not established a substantial likelihood of success on the merits of their claims against Judge Lauderback. As to the specific arguments[8] they raise

---

[8] The Court notes that many of these claims regarding Judge Lauderback and the entry of the joint mutual restraining order are not contained in the amended complaint and are not properly raised in a motion. *See Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 817 (6th

50

in the motion for an injunction, plaintiffs first contend that plaintiff McCurry's due process rights were violated by issuance of the joint mutual restraining order without hearing her testimony. The record shows that Judge Lauderback held a hearing on July 14, 2022, to address Benjamin's petition for an order of protection against plaintiff McCurry [Doc. 24-16]. After Attorney Phillips made an opening statement, Judge Lauderback permitted plaintiff McCurry to make an opening statement and informed her that she would have a chance to provide evidence later in the proceeding [*Id.* at 12]. Plaintiff McCurry later asked several times if she would have an opportunity to testify, and Judge Lauderback confirmed that she would [*Id.* at 23, 29–30].

However, at the end of Benjamin's direct testimony, Judge Lauderback stated that he was not going to permit cross-examination or further evidence, because he was going to dismiss Benjamin's petition for an order of protection, and accordingly, there was no need for further evidence [*Id.* at 59]. After Judge Lauderback announced the terms of the joint mutual restraining order that he *sua sponte* issued, plaintiff McCurry stated that it was "unfair that they've been allowed to testify and I haven't," to which Judge Lauderback responded that it was not unfair because he was dismissing the petition [*Id.* at 64]. Plaintiff McCurry continued to complain that she was told she could testify, and Judge Lauderback again explained that, in the normal course, he would hear both sides

---

Cir. 2020) ("Ultimately, the plaintiff's amended complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory" (internal quotation marks omitted)). However, because, even if these claims were properly raised, they would not establish entitlement to relief, the Court addresses the merits of the arguments.

51

before granting an order of protection, but, because he was dismissing the petition, he did not need to hear more evidence [*Id.* at 65]. Plaintiff McCurry also continued to raise dissatisfaction about her child custody arrangement, and Judge Lauderback repeatedly explained that the custody matter was not before him at that hearing, only the petition for a restraining order [*Id.* at 64–67]. Despite all explanation, plaintiff McCurry continued to assert that it was unfair that she was not permitted to testify [*Id.* at 67–68].

Nothing about Judge Lauderback's decision to not hear additional evidence regarding Benjamin's petition for an order of protection after he had already determined that Benjamin had not met the requirements for obtaining an order of protection violated plaintiffs' constitutional rights. Although Judge Lauderback initially assured plaintiff McCurry she would be provided a chance to testify, essentially what happened was, before plaintiff McCurry could testify, Judge Lauderback decided to rule in her favor on the petition for an order of protection. Nothing plaintiff McCurry could have stated or presented as evidence after that point would have changed the outcome, which, again, was in *her favor*. Thus, if plaintiffs raised a claim against Judge Lauderback on this ground, it would not have a substantial likelihood of success on the merits.

Next, plaintiffs argue that Judge Lauderback ignored plaintiff McCurry's VAWA. But plaintiff McCurry's alleged VAWA had no bearing on Benjamin's petition for an order of protection. Moreover, plaintiffs have not explained how consideration of plaintiff McCurry's alleged VAWA would have altered the outcome of the hearing on the petition for an order of protection, which was a decision in plaintiff McCurry's favor.

52

Accordingly, if plaintiffs raised a claim against Judge Lauderback on this ground, it would not have a substantial likelihood of success on the merits.

Additionally, plaintiffs assert that plaintiff McCurry was "harassed" by the Tennessee Court of Appeals when she attempted to appeal this issue. However, the Court has reviewed the video of the oral argument, which plaintiffs cite [Doc. 106, p. 5], and finds that nothing about the oral argument was "harassing." Plaintiff McCurry was allowed to present her argument for several minutes, before Judge John Westley McClarty asked what evidence she had presented of domestic violence. TNCourts, *Benjamin McCurry v. Agness McCurry*, YOUTUBE (Aug. 16, 2023), https://www.youtube.com/watch?v=jvObRnh7nDY. After plaintiff McCurry responded that the VAWA was her evidence, Judge McClarty asked if there were any police reports or reports made to local authorities of domestic violence. *Id.* Plaintiff McCurry responded about evidence presented, and Judge McClarty noted that much of plaintiff McCurry's statements related to her initial divorce proceeding and questioned whether in the emergency custody proceeding she had presented evidence of domestic violence. *Id.* Judge D. Michael Swiney later asked plaintiff to clarify what arguments she raised before the trial court regarding a change of custody, indicating that the court of appeals could only review those issues. *Id.* Plaintiff McCurry was allowed to continue arguing a few minutes beyond the 15-minute oral argument limit, at which point, Judge Swiney cut off plaintiff McCurry's argument. *Id.* Plaintiff McCurry protested that the oral argument had been unfair. *Id.*

53

Absolutely nothing in this oral argument could be construed as "unfair" or "harassing." Plaintiff McCurry was given more than the 15 minutes that the court of appeals initially allowed her for oral argument. To the extent that plaintiffs find it "harassing" or "unfair" that plaintiff McCurry was asked questions during her oral argument, it is standard practice for appellate judges to ask a party questions during the course of oral argument. *See, e.g.,* Supreme Court of the United States, *Supreme Court Procedures*, https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1 (last accessed Feb. 20, 2024) (stating that, at oral argument, "lawyers for each party have a half hour to make their best legal case to the Justices. Most of this time, however, is spent answering the Justices' questions. The Justices tend to view oral arguments not as a forum for the lawyers to rehash the merits of the case as found in their briefs, but for answering any questions that the Justices may have developed while reading their briefs"). Thus, even if plaintiffs had raised a claim relating to the Tennessee Court of Appeals judges' alleged harassment during oral argument on appeal, they have not shown a substantial likelihood of success on the merits of such claim.

Moreover, to the extent that plaintiffs contend that they have shown a substantial likelihood of success on the merits because this Court entered a scheduling order setting a trial date, the entry of the scheduling order had no relevance to the merits of plaintiffs' claims in this case. Rather, the Court is required, by the Federal Rules of Civil Procedure, to enter a scheduling order at a certain time in every civil case. *See* Fed. R.

Civ. P. 16(b)(1).  Accordingly, the entry of the scheduling order does not provide any evidence that plaintiffs have a substantial likelihood of succeeding on the merits of their claims.

Furthermore, plaintiffs have not established that they will suffer irreparable harm if a preliminary injunction is not entered.  As to plaintiff Jones, it is unclear how she will suffer any harm, much less irreparable harm, as she is not a party to the joint mutual restraining order at issue here.  As to plaintiff McCurry, she contends that she will suffer irreparable harm because DCS has begun a new conspiracy against her to terminate her parental rights.  But it is entirely unclear how the joint mutual restraining order is facilitating this new alleged conspiracy, or how a preliminary injunction against enforcement of the joint mutual restraining order would stop this new conspiracy. Accordingly, plaintiffs have not met their burden of establishing irreparable harm will result if the Court does not issue the requested injunctive relief.

For all of these reasons, plaintiffs' request for a preliminary injunction against the July 14, 2022, joint mutual restraining order entered by Judge Lauderback [Doc. 106] is **DENIED**.

## H.    R&R on Motions to Dismiss

Defendants Benjamin, Kelly, Attorney Phillips, Attorney Ward, Briggs, and Judge Minga have filed motions to dismiss plaintiffs' amended complaint [Docs. 41, 42, 48, 55, 81].  Plaintiffs responded [Docs. 52, 53, 54, 57, 83].

55

### 1. Summary of R&R

In an R&R, Judge Wyrick recommended that these motions to dismiss be granted [Doc. 108]. First, Judge Wyrick noted that the only claims plaintiff Jones asserts are against Judge Wright relating to her allegation of intentional infliction of emotional distress, but to the extent that she sought to bring claims against any defendant other than Judge Wright, such claims fail because she has only alleged facts related to her interactions with Judge Wright [*Id.* at 15].

Next, Judge Wyrick stated that Attorney Phillips sought dismissal based upon plaintiffs' failure to effectuate proper service [*Id.* at 16]. Judge Wyrick also noted that plaintiffs did not contest the actual sufficiency of service, but instead argue that Attorney Phillips had actual knowledge of the lawsuit [*Id.*]. Judge Wyrick found that plaintiffs provided no proof that the summons and complaint were sent in accordance with Tennessee Rule of Civil Procedure 4.04(10), and nothing in the record reflected that the documents were sent by registered return receipt or certified return receipt mail [*Id.* at 17]. Moreover, actual knowledge of the lawsuit is not a defense to insufficiency of process. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). Accordingly, Judge Wyrick found that Attorney Phillips was not properly served and recommended that plaintiffs' amended complaint be dismissed as to Attorney Phillips for insufficient service of process under Rule 12(b)(5) [*Id.*].

Regarding Briggs and Judge Minga's motion to dismiss, Judge Wyrick first addressed plaintiffs' contention that the Court should decline to consider the motion

56

because defendants did not meet and confer with plaintiffs before filing the motion [*Id.* at 18]. Judge Wyrick noted that the requirement to meet and confer prior to filing a motion to dismiss is akin to the local rule, and the Court has broad discretion to overlook violations [*Id.*]. Additionally, the purpose of the meet and confer requirement is to discuss whether any purported deficiencies can be cured by the filing of an amended complaint, and defendants' claim to immunity is not a deficiency that could be cured by meeting and conferring; therefore, Judge Wyrick recommended the merits of the motion be addressed [*Id.* at 18–19].

Judge Wyrick then found that Briggs was entitled to quasi-judicial immunity because the actions described in plaintiffs' amended complaint were taken while carrying out her duties as Clerk of Court [*Id.* at 20–22]. Judge Wyrick noted that plaintiffs' amended complaint refers to an incident in which Briggs allegedly "called the police" on plaintiff McCurry, and Judge Wyrick had reviewed the recording of plaintiff McCurry's interaction with Clerk's Office personnel on the day at issue, which reflects that a member of that office called a court security officer to the window [*Id.* at 20]. Judge Wyrick found that, to the extent that it was Briggs who called the court security officer to the window to ensure a peaceful interaction between her staff and McCurry, she was acting in her role as Clerk of Court.

Additionally, plaintiffs contend that Briggs engaged in misconduct by posting a "defamatory" court order on the window of the Office of the Circuit Court Clerk, addressing the manner in which members of the public should conduct themselves when

57

interacting with the Clerk's Office [*Id.* at 21]. Judge Wyrick noted that it would be impossible for this order to constitute publication of a defamatory statement, as the order does not mention plaintiff McCurry and, on its face, there is no way to determine that plaintiff McCurry had any connection to it. Regardless, Judge Wyrick found that Briggs was acting in her capacity as Clerk of Court when she filed and posted the order at issue at the clerk's window, and therefore, she is entitled to immunity for those actions [*Id.*].

Moreover, Judge Wyrick rejected plaintiffs' claims regarding Briggs and her counsel, Attorney Ward, making "defamatory statements" regarding plaintiff McCurry in responding to a state court lawsuit, because statements made during a judicial proceeding that are relevant and pertinent to the issues are privileged and cannot be used as a basis for a libel action [*Id.* at 21–22]. And finally, Judge Wyrick rejected plaintiffs' claims that Briggs was involved in a conspiracy with Judge Wright because Attorney Phillips included information regarding the posted order discussed previously in a filing in plaintiff McCurry's custody case [*Id.* at 22]. Judge Wyrick noted that there is no allegation that Briggs was involved in Attorney Phillips's decision to include this information in an argument and plaintiffs have not set forth any facts that would indicate a conspiracy between Judge Wright and Briggs [*Id.*].

Turning to Judge Minga, Judge Wyrick took judicial notice of his role as General Sessions Court Judge for Washington County, Tennessee [*Id.* at 23]. Judge Wyrick also noted that plaintiff McCurry was charged with two misdemeanors and filed motions in Judge Minga's court. Based on this information, Judge Wyrick found that Judge Minga

58

had jurisdiction over plaintiff McCurry's criminal case and did not act in the complete absence of all jurisdiction [*Id.*]. Moreover, the actions plaintiffs label as improper were all taken in Judge Minga's judicial capacity [*Id.* at 24]. Accordingly, Judge Minga is entitled to judicial immunity [*Id.*].

Next, Judge Wyrick stated that plaintiffs sought to hold defendants liable under one or more of the following statutes: 18 U.S.C. §§ 241, 242, 371, 1001, 1621, and 1623 [*Id.*]. However, these sections address criminal liability and penalties, and do not create a private right of action that would allow plaintiffs to sue under them [*Id.* at 25]. Accordingly, Judge Wyrick recommended dismissal of any claims relying on these criminal statutes [*Id.*].

Judge Wyrick stated that, while plaintiffs have only explicitly sued Judge Wright under 42 U.S.C. § 1983, given their accusations that Benjamin, Kelly, and Attorney Ward conspired with Judge Wright, the Court would construe plaintiffs' claims against those defendants as claims under § 1983 [*Id.* at 25–26]. Judge Wyrick noted that a § 1983 claim requires a showing that a defendant was acting under color of state law, but a private party may be liable under § 1983 if they conspired with a state actor to violate an individual's constitutional rights [*Id.* at 26–27]. To the extent that plaintiffs assert that Benjamin and Kelly conspired with Attorney Phillips, such alleged conspiracy could not support a claim under § 1983 because all of these defendants are private actors [*Id.* at 27].

As to plaintiffs' claims against Benjamin, Judge Wyrick noted that plaintiffs allege Benjamin lied in pleadings before the state court [*Id.* at 28]. But Judge Wyrick found

59

that, even accepting this allegation as true, it does not indicate that Benjamin was conspiring with Judge Wright. And plaintiffs provided no evidence that Judge Wright was aware of any false information contained in these pleadings or that he conspired with Benjamin in their filing. Regarding the other occurrences described by plaintiffs in the amended complaint, Judge Wyrick found that such were common in litigation and did not indicate a conspiracy or any unlawful activity [*Id.*].

As to plaintiffs' claims against Kelly, Judge Wyrick found that plaintiffs provided no facts indicating that Kelly ever interacted with Judge Wright outside of a judicial setting [*Id.* at 29]. Additionally, the facts they rely upon in asserting a claim against Kelly are largely the same as those used in attempting to assert a claim against Benjamin, which fail for the same reasons [*Id.*].

As to plaintiffs' claims against Attorney Ward, Judge Wyrick found that the facts plaintiffs allege in support of their claim of a conspiracy between Attorney Ward and Judge Wright are either descriptions of common occurrences in litigation or conclusory and unsupported statements which are insufficient to demonstrate that the two ever formed a single plan or conspiratorial objective [*Id.*].

As a result of the above, Judge Wyrick recommended dismissal of all claims asserted by plaintiffs under federal law as to defendants Benjamin, Kelly, Briggs, Attorney Ward, and Judge Minga [*Id.* at 32]. Further, Judge Wyrick recommended that the Court decline to exercise supplemental jurisdiction over plaintiffs' state law claims for emotional distress [*Id.* at 33].

60

### 2. Analysis of Objections

Plaintiffs filed a plethora of objections to the R&R [Doc. 113]. First, plaintiffs argue that the R&R should be rejected in whole because the magistrate judge "violated the Local Rules of this Court and the Federal Rules of Civil Procedure 72(b)" [*Id.* at 1]. Plaintiffs claim that Judge Wyrick committed judicial misconduct in amending the R&R without leave from the district court [*Id.* at 2]. Additionally, plaintiffs appear to assert that Judge Wyrick violated Local Rule 7.2 and Federal Rule of Civil Procedure 72(b) by not "rul[ing] timely on pre-trial matters" [*Id.* at 3]. Plaintiffs contend that the Court should reject the R&R because Judge Wyrick has "unclean hands" and on the grounds of equitable estoppel [*Id.* at 4].

But, contrary to plaintiffs' assertion, the instant R&R was not amended. And, as the Court has previously addressed, the motions in this case have all been timely addressed, particularly given the number and length of the motions filed and the delays caused by requests for recusals and appeals. The Court finds no error in the timeliness of Judge Wyrick's rulings. Moreover, to the extent plaintiffs ask the Court to reject the R&R on the grounds of equitable estoppel or the doctrine of unclean hands, those doctrines only apply to parties to the litigation, not a judicial officer. *See Heckler v. Comm. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) ("the party claiming the estoppel must have relied on its *adversary's* conduct in such a manner as to change his position for the worse" (internal quotation marks omitted) (emphasis added)); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir.

61

1995) ("The concept of unclean hands may be employed by a court to deny injunctive relief where *the party applying for such relief* is guilty of conduct involving fraud, deceit, unconscionability, or bad faith . . . ." (internal quotation marks omitted) (emphasis added)).  Accordingly, this objection is **OVERRULED**.

Second, plaintiffs argue that the R&R should be rejected due to the magistrate judge's "erroneous views regarding Agness [sic] mental health protected under HIPAA" [Doc. 113, p. 4].  Plaintiffs appear to assert that Judge Lauderback suspended plaintiff McCurry's visitation rights with her child based on "aggravated perjury and false allegations about her mental health" and subsequently recused himself from the custody case due to this error [*Id.* at 5–6].  Plaintiffs contend that Judge Wyrick "failed to report the truth of Judge Lauderback's recusal" [*Id.* at 5].  Plaintiffs also contend that defendants Benjamin and Attorney Phillips violated plaintiff McCurry's right to privacy under HIPAA by submitting a medical report under seal in the underlying custody case [*Id.* at 6].  Plaintiffs assert that Benjamin and Attorney Phillips fabricated evidence that plaintiff McCurry suffered from "paranoia, psychosis and delusional thinking" and this falsehood was accepted and furthered by Judge Wright [*Id.* at 8].  Moreover, plaintiffs contend that Judge Wright's reliance on such information is itself a HIPAA violation [*Id.* at 8–10].

These arguments constitute a new claim that was not raised previously, and therefore, are not properly raised in objections to the R&R.  However, even if properly raised, the Court finds that plaintiffs' HIPAA claims fail because there is no private right of action under HIPAA.  *See Middlebrook v. Pelto*, No. 2:23-cv-173, 2023 WL 7144601,

62

at *3 (W.D. Mich. Oct. 31, 2023) ("HIPAA provides no private right of action" and instead "penalties for HIPAA violations are imposed by the Secretary of Health and Human Services" (internal quotation marks and alterations omitted)). This objection is therefore **OVERRULED**.

Third, plaintiffs contend that the R&R should be rejected based on the magistrate judge's "erroneous views regarding Retired Judge Thomas Wright's missing Oath with the Tennessee Secretary of State TN Code § 8-18-108 (2021)" [Doc. 113, p. 10]. Plaintiffs claim that Judge Wright "is a fugitive from the law because he failed to take his mandatory sworn oath and file it with the Tennessee Secretary of State" [*Id.* at 11]. Plaintiffs contend that by acting without his mandatory sworn oath, Judge Wright committed a Class C misdemeanor [*Id.* at 13]. Plaintiffs argue that Judge Wyrick erroneously relied on the proceedings before Judge Wright which "are void and nullified by Tennessee law" [*Id.* at 13–14].

As the Court explained *supra*, plaintiffs have not established that Judge Wright's oath of office was invalid based on their speculation that it was not filed with the Tennessee secretary of state. And Judge Wyrick provided a copy of Judge Wright's oath of office [Doc. 102-1] which appears valid on its face. Moreover, even if Judge Wright's oath of office were not valid, such has no impact on the R&R's recommendations that claims against other defendants should be dismissed. Contrary to plaintiffs' assertions, the R&R does not rely on any order of Judge Wright in recommending dismissal of their

63

complaint as to Benjamin, Kelly, Briggs, Judge Minga, Attorney Ward, and Attorney Phillips. Accordingly, this objection is **OVERRULED**.

Fourth, plaintiffs argue that the R&R should be rejected based on the magistrate judge's "erroneous views regarding Plaintiff Agness' VAWA, violations to the Privacy Act of 1974 regarding her 'VAWA application' and 'details of the abuse' from Benjamin Mc[C]urry" [Doc. 113, p. 14]. Plaintiffs point to a footnote in the R&R which noted that, despite repeated reference to it, plaintiffs had not presented plaintiff McCurry's VAWA application or any details of the alleged abuse in the record [*Id.*]. Plaintiffs argue that the magistrate judge did not need the VAWA application or any details of the alleged abuse, and her statements violated plaintiff McCurry's right to privacy under 8 U.S.C. § 1367 [*Id.* at 15].

Judge Wyrick's notation regarding plaintiff McCurry's alleged VAWA in this footnote is ultimately irrelevant to her recommendation on the motions to dismiss. Regardless, Judge Wyrick's point is well made that, despite plaintiff McCurry's insistence that Judge Wright's rulings in her state custody proceeding ignored her VAWA, and that her VAWA determination is conclusive as to the custody dispute, plaintiff McCurry has yet to present this Court with actual proof of a final, approved VAWA petition. No court could determine that error occurred in the state court proceedings in contravention of plaintiff McCurry's VAWA in the complete absence of any evidence that plaintiff McCurry has a final, approved VAWA petition. But, again, Judge Wyrick's footnote to this effect is merely dicta, which did not impact the

64

recommendation in her R&R. Moreover, Judge Wyrick's footnote could not have violated 8 U.S.C. § 1367, which provides for penalties for disclosure of certain information under the VAWA, when Judge Wyrick had no information to disclose. And, to the extent that plaintiffs allege that Judge Wyrick was somehow prohibited from even noting the lack of evidence alleged to be contained in plaintiff McCurry's VAWA, § 1367 provides no support for this argument. Accordingly, this objection is **OVERRULED**.

Fifth, plaintiffs contend that the R&R should be rejected because they have filed a motion to amend their complaint to include additional defendants and claims under § 1983 [Doc. 113, p. 17]. They contend that these new claims center on a new conspiracy involving Benjamin and the DCS attempting to terminate plaintiff McCurry's parental rights based on false allegations about her mental health [*Id.* at 17–18]. For the reasons stated *infra*, plaintiffs' motions to amend are denied. Accordingly, this objection is **OVERRULED**.

Sixth, plaintiffs argue that the R&R must be rejected as to Attorney Phillips, because plaintiffs complied with Federal Rule of Civil Procedure 4 and provided proper service [Doc. 113, p. 21]. Plaintiffs contend that Judge Wyrick "intentionally overlooked FRCP 4(d) that describes the 'waiver' process" and they were not obligated to give Attorney Phillips a waiver [*Id.* at 22]. Plaintiffs state that they gave the summons, complaint, and exhibits to a process servicer that mailed it to Attorney Phillips's place of

65

business, therefore, they properly served Attorney Phillips under Rule 4(e)(1) & (2) [*Id.* at 23].

As to Rule 4(d)'s waiver provision, it is unclear why plaintiffs believe that Judge Wyrick invoked this provision. The R&R does not mention any waiver of service with regard to Attorney Phillips. Nor does Attorney Phillips contend that she waived her right to service of process. Accordingly, plaintiffs' statements regarding Rule 4(d) are irrelevant to the instant matter.

Plaintiffs also contend that they served Attorney Phillips under Rule 4(e)(1) and (2). That rule states:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). By plaintiffs' own admission, they mailed a copy of the complaint and summons to Attorney Phillips's place of business. This clearly does not qualify as

66

proper service under Rule 4(e)(2), as the complaint and summons were not personally handed to Attorney Phillips, it was not left with a person at Attorney Phillips's residence, and it was not delivered to an authorized agent. *See Cunningham v. Enagic USA, Inc.*, No. 3:15-0847, 2019 WL 1029551, at *4 (M.D. Tenn. Feb. 15, 2019) ("[T]he Federal Rules do not independently authorize service of an individual by mail, and, therefore, courts must look to state law when service by mail is attempted").

The Tennessee Rules of Civil Procedure, however, do permit service by mail. Tenn. R. Civ. P. 4.04(10). Specifically, the Tennessee rule states that:

> Service by mail of a summons and complaint upon a defendant may be made by the plaintiff . . . . Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint *by registered return receipt or certified return receipt mail* to the defendant.

Tenn. R. Civ. P. 4.04(10) (emphasis added). Service in compliance with Tennessee Rule 4.04(10) would constitute compliance with Federal Rule 4(e)(1). However, as Judge Wyrick explained, plaintiffs have not shown that they have properly served Attorney Phillips in compliance with Tennessee Rule 4.04(10), because they have not shown, or even alleged, that they mailed the summons and complaint "by registered return receipt or certified return receipt mail." Accordingly, Judge Wyrick properly found that plaintiffs have not effectuated service of process on Attorney Phillips and the objection to this conclusion is **OVERRULED**.

Seventh, plaintiffs argue that the magistrate judge's determination regarding Briggs's immunity must be rejected because Briggs's defamation was used by Attorney Phillips to deprive plaintiff McCurry of her visitation rights with her son [Doc. 113, p.

67

25].  Plaintiffs note that Attorney Phillips stated in the Emergency Motion that plaintiff McCurry "has a tendency to lash out and lose physical control when she is frustrated" and stated that this was "evidenced by the behavior she elicited at the circuit court clerk's window, resulting in a warning to everyone who comes to the window to conduct themselves appropriately" [*Id.* at 26].  Plaintiffs contend that Briggs is not entitled to immunity because her actions were beyond the scope of her official duties [*Id.* at 28]. Plaintiffs concede that the posted order never identified anyone by name but assert that Judge Wright dismissed a complaint filed by plaintiff McCurry to cover up the truth that Briggs provided Attorney Phillips with the information about the origin of the posted order [*Id.* at 28–29].

The Court interprets plaintiffs' objection as alleging that Briggs acted outside the scope of her official duties in providing Attorney Phillips information about the connection between plaintiff McCurry and the posted order.  But ultimately, that is a purely speculative claim.  Plaintiffs seem to imply that, because Attorney Phillips knew of the connection between plaintiff McCurry and the posted order, Briggs must have contacted Attorney Phillips to share this information.  But Attorney Phillips could have learned of the incident at the courthouse leading to the order in any number of ways. And, even if Briggs provided this information to Attorney Phillips, and even if it was outside the scope of activity for which she would be immune from suit, it nevertheless does not violate any of plaintiff's constitutional rights, such that plaintiff could state a claim under § 1983.  Accordingly, this objection is **OVERRULED**.

68

Eighth, plaintiffs argue that the R&R must be rejected as to claims against Benjamin and Kelly because there is evidence of child abuse [Doc. 113, p. 30]. They claim that Judge Wyrick "failed to assert any grounds showing that Benjamin is innocent of the claims alleged in the complaint" and "only offered her biased and erroneous opinion of the facts" [*Id.* at 31]. Plaintiffs contend that there is "plenty of evidence" to show existing child abuse occurring [*Id.* at 33].

Judge Wyrick correctly found that plaintiffs could not maintain a claim of "child abuse" against any defendant under the criminal statute, because "criminal statutes do not give rise to a private cause of action and cannot be a basis for a private civil action." *Brewster v. Wells Fargo Bank, N.A.*, No. 11-1232, 2012 WL 4024749, at *4 n.8 (W.D. Tenn. Sept. 12, 2012). Moreover, to the extent that plaintiffs object that Judge Wyrick failed to prove Benjamin's innocence, it is plaintiffs' burden to plead plausible claims, and a judge bears no burden to prove or disprove any matter. Rather, a "judge has a responsibility to function as a neutral, impartial arbiter and must refrain from taking on the role of advocate for either party." *Elias v. Gonzales*, 490 F.3d 444, 451 (6th Cir. 2007). This objection is therefore **OVERRULED**.

Ninth, plaintiffs contend that the R&R's conclusions regarding claims against Attorney Ward and Judge Minga should be rejected because Judge Wyrick is engaged in "an active criminal conspiracy" with the defendants [Doc. 113, p. 33]. Plaintiffs argue that Judge Wyrick granted Attorney Phillips's motion to stay discovery without good cause [*Id.* at 34]. Additionally, Attorney Phillips already knew her motion to dismiss

69

would be granted, based on her argument that a prior R&R had found plaintiffs had not demonstrated any likelihood of success on the merits, which shows a conspiracy between the judges in this case [*Id.*].

It appears that plaintiffs refer to Attorney Phillips's Motion to Modify Scheduling Order, asking the Court to delay a discovery conference until a ruling on the motions to dismiss [Doc. 70]. In that motion, Attorney Phillips cited Judge Wyrick's R&R on the motion for a preliminary injunction, and her finding that plaintiffs had not demonstrated a likelihood of success on the merits [*Id.* at 1]. Judge Wyrick granted the motion, finding that a discovery conference by the parties alone would be unproductive and judicial economy would be served by delaying a discovery conference until after the motions to dismiss were denied [Doc. 88]. Contrary to plaintiffs' assertions, Judge Wyrick provided good cause for granting this motion. Moreover, nothing in the motion or order constitutes evidence of a conspiracy between Judge Wyrick and Attorney Phillips. As explained *supra*, Judge Wyrick was required to make a finding about whether plaintiffs had shown a likelihood of success on the merits in addressing plaintiffs' motion for a preliminary injunction. *See Goodman*, 748 F.3d at 690 (stating that to obtain a preliminary injunction, a plaintiff is required to show, among other things, "a substantial likelihood or probability of success on the merits of [their] claim." (internal quotation marks omitted)). Attorney Phillips's knowledge of that ruling does not indicate a conspiracy. This objection is therefore **OVERRULED**.

70

### 3.    Conclusion

For these reasons, plaintiffs' objections [Doc. 113] are **OVERRULED**.  The R&R [Doc. 108] is **ACCEPTED** and **ADOPTED IN WHOLE** and incorporated into this memorandum opinion.  Defendants Benjamin, Kelly, Attorney Phillips, Attorney Ward, Briggs, and Judge Minga's motions to dismiss [Docs. 41, 42, 48, 55, 81] are **GRANTED** and this action will be **DISMISSED** as to those defendants.[9]

### I.    Motions to Amend

The Court now turns to plaintiffs' motions to amend [Docs. 109, 114].  Plaintiffs appear to indicate that they seek to raise new claims under § 1983 [Doc. 114, p. 2].

After a responsive pleading or Rule 12(b)(6) motion has been served, a party may move for leave to amend a complaint by leave of the Court.  Fed. R. Civ. P. 15(a).  Under Rule 15(a)(2), a "court should freely give leave [to amend] when justice so requires." *Id*. The Court, however, must balance the harm to the moving party if he is not permitted to amend against the prejudice caused to the other party if leave to amend is granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Specifically, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."

---

[9] Specifically, plaintiffs' federal claims against Benjamin, Kelly, Attorney Ward, Briggs, and Judge Minga are dismissed with prejudice.  Plaintiffs' federal claims against Attorney Phillips are dismissed without prejudice.  *See* Fed. R. Civ. P. 4(m) ("[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice"); The Court also adopts Judge Wyrick's recommendation that the Court decline supplemental jurisdiction over plaintiffs' remaining state law claims, and therefore, those claims are dismissed without prejudice.

71

*Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citation omitted). "If the district court concludes that the pleading as amended could not withstand a motion to dismiss, then the court may deny the motion to amend as futile and save the parties and the court the expense of having to confront a claim doomed to failure from its outset." *Spigno v. Precision Pipeline, LLC*, 59 F. Supp. 3d 831, 834 (E.D. Mich. 2014).

As an initial matter, the Court notes that plaintiffs have failed to comply with the Court's local rules regarding motions to amend. Specifically, those rules state: "[a] party who moves to amend a pleading shall attach a copy of the proposed amended pleading to the motion." E.D. Tenn. L.R. 15.1. The rule states that "failure to comply with this rule may be grounds for denial of the motion." *Id.* Accordingly, the Court finds that plaintiffs' motions to amend are properly denied for failure to comply with the Court's local rules. Nonetheless, for the reason stated *infra*, the Court also, and alternatively, finds that plaintiffs' proposed amendments to the complaint would be futile.

First, plaintiffs seek to add a new claim against Judge Wright for acting without a valid oath of office [Doc. 109, pp. 2–3; Doc. 115, pp. 2–3]. But, as the Court addressed *supra*, it appears that Judge Wright does have a valid oath of office. Accordingly, amendment to add this claim would be futile.

Second, plaintiffs seek to add claims against all of the Tennessee Supreme Court judges and Court of Appeals judges that presided over plaintiff McCurry's appeals "that were unfairly dismissed" [Doc. 109, p. 3]. Plaintiffs allege that these judges "ignored her briefs and ruled automatically in favor of Defendant Benjamin Mc[C]urry and [J]udges

72

Lauderback and Wright" [*Id.* at 4–5]. The addition of this claim would be futile because plaintiffs have not even identified the specific judges who allegedly unfairly dismissed plaintiff McCurry's appeals. Moreover, plaintiffs do not allege that these judges lacked jurisdiction over plaintiff McCurry's appeals, and dismissing appeals is "a function normally performed by a judge," and therefore, these prospective defendants would be entitled to absolute judicial immunity for the alleged actions. *See Mireles v. Waco*, 502 U.S. 9, 11–13 (1991).

Third, plaintiffs seek to add claims against Clerk of Court James Hivner for "destroying the records of Agness [sic] appeal on behalf of the Tennessee Supreme Court and Court of Appeals judges" which they categorize as "spoliation of evidence" in a separate lawsuit, Case Number 3:22-cv-380, which names the Tennessee Court of Appeals as a defendant [*Id.* at 5]. But a claim that evidence in another case was spoliated would be properly brought in that federal case, not this one, as spoliation is a sanction, rather than a separate claim for relief. *See BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1059 (W.D. Tenn. 2009) ("a district court may impose various different kinds of sanctions for spoliated evidence"). Accordingly, this proposed claim is futile.

Fourth, plaintiffs seek to add District Judge Travis McDonough for abusing his discretion by "blocking Agness from amending her complaint indefinitely" in Case Number 3:22-cv-380 [*Id.* at 6]. Plaintiffs' proposed claim against Judge McDonough essentially asks the undersigned to review Judge McDonough's judgment in Case Number 3:22-cv-380, which is currently pending appeal before the Sixth Circuit. But the

73

appropriate forum for review of a district judge's decision is the appellate court, not a new civil lawsuit in the district court. *See About Federal Courts: Court Role and Structure*, UNITED STATES COURTS, https://uscourts.gov/about-federal-courts/court-role-and-structure (last accessed Mar. 5, 2024). Accordingly, this claim would therefore be futile.

Fifth, plaintiffs seek to add claims against the DCS and employees Marjorie Quinn, Christal Lane, Samantha James, Jessica Woods, Jessica Brown, Crystal Wilcox, Kevin Grindstaff, Kim Garland, Amy Koslick, Kristy Timmerman, Tara Thomas, and Tyra Donald, for conspiring with Benjamin to terminate plaintiff McCurry's parental rights [Doc. 109, pp. 6–7; Doc. 115, p. 4]. Although largely vague, plaintiffs' allegations seem to relate to DCS employees contacting plaintiff McCurry about creating a "permanency plan," which plaintiff McCurry opposed, because a parenting plan was already in effect. It appears that this claim stems from plaintiff McCurry's misunderstanding that a "parenting plan" and a DCS "permanency plan" are different documents. As an email from DCS, which plaintiff McCurry attaches to the motion to amend, explains, "[a]ny time the Department has an open family support services case, we are required to create a permanency plan. This is different and unrelated to your parenting plans" [Doc. 109-1, p. 1]. Accordingly, based on plaintiffs' own evidence, this claim would be futile.

Sixth, plaintiffs seek to add claims against Attorney General Jonathan Skrmetti "for allowing his office to provide legal representation to these State employees to

74

Case 2:23-cv-00029-TAV-CRW   Document 132   Filed 03/05/24   Page 74 of 88   PageID #: 3759

commission a crime against Agness and her minor son," and against Heather Ross, Wade Barnett, and Attorney Ahillen for "provid[ing] legal representation against State and Federal law" [Doc. 109, p. 7]. But plaintiffs do not allege how providing representation to state defendants in various legal proceedings brought by plaintiff McCurry violates plaintiffs' constitutional rights, as required under § 1983. Moreover, defendants have a due process right to retain counsel in a civil proceeding. *Maness v. Meyers*, 419 U.S. 449 (1975) (Stewart, J., concurring) (citing *Powell v. Alabama*, 287 U.S. 45, 69 (1932)). Accordingly, plaintiffs' prospective claims for providing legal representation in plaintiff McCurry's civil matters are futile.

Seventh, plaintiffs seek to add claims against Johnson City Medical Center for declining to offer treatment to plaintiff McCurry's son "when Defendant Benjamin Mccurry threatened to murder [the minor child] and Agness by throwing them off a bridge" [*Id.*]. But plaintiffs do not allege that plaintiff McCurry's son suffered any medical issues or physical or mental harm relating to this alleged threat. Moreover, and in any event, Johnson City Medical Center is not a state actor, as required for a claim under § 1983. *See Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020) ("Only claims against 'state actors' are eligible for relief under [§ 1983]"). Therefore, this claim would be futile.

Eighth, plaintiffs seek to add a claim against former Chief Justice Roger Page for "assigning retired judge Thomas Wright to Agness [sic] case without swearing him to office" [*Id.* at 8]. But, once again, it appears Judge Wright has a valid oath of office.

75

And plaintiffs cite no support for any claim that the Chief Justice is required to swear a senior judge's oath of office under Tennessee law.  Accordingly, this claim would be futile.

Ninth, plaintiffs seek to add claims against Secretary of State Tre Hargett for "refusing to take action to investigate the missing oaths of Ret. Judge Wright and Agness [sic] recent Judge D[.] Kelly Thomas Jr[.] that replaced with him with [sic] no mandatory sworn [sic] on file with the Tennessee Secretary of State" [*Id.*].  As to Judge Wright, the Court again points to its analysis *supra*, finding that is appears Judge Wright has a valid oath of office.  As to Judge Thomas, the Court takes judicial notice that the Tennessee Secretary of State's website contains an oath for Judge Thomas, dated August 4, 2023.  *See* "Oaths of Office", Tennessee Secretary of State https://oaths.tnsos.net/sits/default/files/2023-09/Thomas%2C%20D.%20Kelly_20230804 .pdf (last accessed Feb. 15, 2024).  It is unclear how failure to investigate frivolous claims regarding these judges' oaths of office violated plaintiffs' constitutional rights as required by § 1983.  *See* 42 U.S.C. § 1983 (providing a remedy for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States).  Accordingly, this claim would be futile.

Tenth, plaintiffs seek to add claims against "[s]ome Officers from Johnson City Police and Washington County Sheriff's Office" for "subjecting Agness to physical injury starting 2018 and recently on February 7th 2023" [Doc. 109, p. 9].  Notably, plaintiffs appear to seek to add John Doe defendants, as they have provided no names for

76

the officers they seek to add. But "[u]ntil Plaintiff files an amended complaint . . . that identifies and adds or joins a John Doe defendant by his true name, the John Doe allegations in the complaint are mere surplusage." *Wilson v. Delta Airlines, Inc.*, No. 2:09-cv-2687, 2010 WL 2836326, at *3 (W.D. Tenn. July 19, 2010) (internal quotation marks omitted). And given the conclusion of this memorandum opinion that all of plaintiffs' claims should be dismissed, it would be futile for her to add claims against John Doe defendants, which could not stand alone. Moreover, plaintiffs' allegations that these John Doe defendants subjected plaintiff McCurry to physical injury is simply too vague and conclusory to state a claim for relief. Accordingly, this proposed amendment would be futile.

Eleventh, plaintiffs seek to add claims related to injury plaintiff McCurry allegedly received from therapist Theresa Fletcher, Altar Fellowship Pastor Mattie Montgomery and "many more Defendants that Agness is still researching in her case" [Doc. 109, pp. 3, 9]. But plaintiffs have not alleged that Fletcher or Montgomery are state actors, as required for a claim under § 1983. *See Howell*, 976 F.3d at 752 ("Only claims against 'state actors' are eligible for relief under [§ 1983]"). And plaintiffs' assertion that these prospective defendants caused some unspecified injury to plaintiff McCurry is too vague to state a claim for relief. *See Hammons v. Cuyahoga Child Enforcement Agency*, 66 F. App'x 623, 624 (6th Cir. 2003) ("The court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions" in addressing whether a complaint states a claim for relief). This prospective claim is therefore futile.

77

Twelfth, plaintiffs seek to add claims against Attorney Phillips, Benjamin, and Judge Wright for violating her HIPAA rights by making "fabricated falsehoods against her mental health alleging 'paranoia and delusional thinking'" [Doc. 115, p. 4]. But, as explained *supra*, HIPAA does not provide a private right of action. *See Middlebrook*, 2023 WL 7144601, at *3 ("HIPAA provides no private right of action" and instead "penalties for HIPAA violations are imposed by the Secretary of Health and Human Services" (internal quotation marks and alterations omitted)). Accordingly, any amendment to add claims under HIPAA would be futile.

Thirteenth, plaintiffs seek to add claims of "defamation," "outrageous conduct" and "Due Process Violations" [Doc. 115, p. 5]. Plaintiffs' assertion that they wish to add these claims without specific factual support, or any indication as to which defendants they wish to assert such claims against, is too vague to state a claim for relief, *see Hammons*, 66 F. App'x at 624, and therefore, amendment to add these claims would be futile.

Finally, plaintiffs also allege that they wish to add claims against Court of Appeals clerks Becky Doyal, Terri Lomax, Joann Newsom, and Francesca Kraft and Senior Judge D. Kelly Thomas, Jr., but do not set forth any specific allegations regarding the claims they wish to add against these prospective defendants [Doc. 109, p. 3]. Because plaintiffs have alleged no specific facts or injuries relating to these defendants, amendment to add them as defendants would be futile. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the

78

pleading standard Rule 8 announces does not required 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

For these reasons, plaintiffs' motions to amend [Docs. 109, 114] are **DENIED**.

### J. Failure to Serve Remaining Defendants

At this juncture, the only remaining claims are those against Judge Wright, Judge Lauderback, Judge Suzanne Cook, Chancellor John Rambo, Judge Lisa Rice, Judge Stacy Street, District Attorney General Steve Finney, Assistant District Attorney Mark Harris, Assistant District Attorney Joseph Shults,[10] and Assistant District Attorney Abby Wallace, in their individual capacities (collectively, the "State Defendants").

Upon the Court's *sua sponte* review of the record, the Court previously ordered plaintiffs to provide evidence that they served the State Defendants with process in compliance with Federal Rule of Civil Procedure 4 and Tennessee Rule of Civil Procedure Rule 4.04 [Doc. 110]. Plaintiffs filed a response [Doc. 111] that did not adequately address the Court's concerns about the validity of service to the State Defendants. Accordingly, the Court issued a second show cause order [Doc. 127].

In response, plaintiffs allege that the State Defendants have been properly served under Rule 4(c) [Doc. 129, p. 4]. Plaintiffs imply that Rule 4(e) does not apply because they were not required to notify the State Defendants about waiving service under Rule 4(d) [*Id.* at 5]. Plaintiffs again point to the "record evidence" of service, namely Docs. 28

---

[10] The Court notes that plaintiffs use the spelling "Shultz" in some of their filings, while the correct spelling is Shults.

and 29 [*Id.* at 9]. Plaintiffs also argue that the State Defendants should be judicially estopped from claiming insufficient service of process because they previously acknowledged receipt of service [*Id.* at 11].

As the Court previously explained [Doc. 127], service of process in a federal action is governed by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(c) sets forth that "[i]n [g]eneral[,] [a] summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1). Rule 4(c) continues to state that service can be completed by "[a]ny person who is at least 18 years old and not a party." Fed. R. Civ. P. 4(c)(2). Rule 4(c) therefore sets forth the *general requirement* that defendants *be* served with process.

Rule 4 then explains *how* to properly serve defendants. *See* Fed. R. Civ. P. 4(e)–(j). As appears to be relevant here, Rule 4(e) explains how to serve an individual within a judicial district of the United States. Fed. R. Civ. P. 4(e). Specifically, Rule 4(e) permits service upon an individual by:

> (1) following state law for servicing a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> > (B) leaving a copy of each at the individual's dwelling or usual place of

80

abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Rule 4 also requires that a defendant be served within 90 days after the complaint is filed or "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Additionally, Rule 4 requires that "[u]nless service is waived, proof of service *must be made to the court*."  Fed. R. Civ. P. 4(l)(1) (emphasis added).

As the Court previously stated [Doc. 127], to the extent that plaintiffs contend that they properly served the State Defendants under Rule 4(c), that rule sets out the general requirement of service of process, while Rule 4(e) sets out the specific requirements of *how* to effectively serve a defendant.  Plaintiffs cite to documents 28 and 29 in the record in support of their claim of valid service [Doc. 129, p. 9].  Those documents show that plaintiffs attempted to serve the State Defendants by mailing a summons and copy of the amended complaint via the United States Postal Service ("USPS"), for which they provide USPS tracking numbers [Docs. 28-1, 28-3, 28-5, 28-6, 28-7, 28-8, 28-10, 28-10, 28-15, 29].  However, none of the listed methods of service in Rule 4(e)(2) permit service by mail.  *See Dortch v. First Fid. Mortg. Co. of Michigan*, 8 F. App'x 542, 546 (6th Cir. 2001) (noting that the federal rules do not contemplate service by mail).  Accordingly, plaintiffs' necessarily must claim that their attempted service is proper under Rule

81

4(e)(1).

"Rule 4(e)(1) permits plaintiffs to use any method of service allowed in the state where service is made or in the state where the district court is located." *Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021). Because this district court is located in Tennessee, plaintiffs may use any method of service permitted by the Tennessee Rules of Civil Procedure, as authorized by Federal Rule of Civil Procedure 4(e)(1).

Service by mail is permissible under the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civ. P. 4.04(10). Tennessee Rule of Civil Procedure 4.04(10) provides:

> Service by mail of a summons and complaint upon a defendant may be made by the plaintiff [ ]. After the complaint is filed, the clerk shall, upon request, furnish the original summons, a certified copy thereof and a copy of the filed complaint to the plaintiff [ ]. Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint by *registered return receipt* or *certified return receipt mail* to the defendant.

Tenn. R. Civ. P. 4.04(10) (emphasis added). Additional requirements for service by mail are discussed in Rule 4.03(2):

> When process is served by mail, the original summons, endorsed as below; an affidavit of the person making service setting forth the person's compliance with the requirements of this rule; and, the return receipt shall be sent to and filed by the clerk. The person making service shall endorse over his or her signature on the original summons the date of mailing a certified copy of the summons and a copy of the complaint to the defendant and the date of receipt of the return receipt from the defendant. *If the return receipt is signed by the defendant*, or by a person designated by Rule 4.04 or by statute, *service on the defendant shall be complete. If not, service by mail*

82

> *may be attempted again or other methods authorized by these*
> *rules or by statute may be used.*

Tenn. R. Civ. P. 4.03(2) (emphasis added). "According to the plain language of Rule 4.03(2)," service is not complete unless the signatory of the return receipt was the defendant or "a person designated by Rule 4.04." *Hall v. Haynes*, 319 S.W.3d 564, 578 (Tenn. 2010); *see also Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 746 (M.D. Tenn. 2010) ("While the Tennessee Rules of Civil Procedure permit service by mail, unless the package is actually received and signed for by the defendant or his "authorized agent," service of process is not effective.") (citing *Massey v. Hess,* No. 1:05-cv-249, 2006 WL 2370205, *3 (E.D. Tenn. Aug. 14, 2006)).

Here, there does not appear to be any evidence demonstrating that plaintiffs sent the summons and amended complaint by registered return receipt or certified return receipt mail. *See* Tenn. R. Civ. P. 4.04(10). Additionally, USPS tracking information plaintiffs provide indicates that the service packages were delivered at mailboxes, P.O. boxes, and a parcel locker; in other words, there is no indication that the State Defendants actually signed for the packages, as is required to render service complete [Docs. 28, 29]. *See* Tenn. R. Civ. P. 4.03(2); *Hall*, 319 S.W.3d at 578; *Fite*, 686 F. Supp. 2d at 746; *Massey,* 2006 WL 2370205, *3.

Contrary to plaintiffs' repeated assertions, Rule 4(d) has no applicability in this case. Rule 4(d) sets forth an optional procedure for notifying a defendant that an action has commenced and requesting that the defendant waive service of summons. Fed. R. Civ. P. 4(d). There is no allegation that plaintiffs asked the State Defendants to waive

83

service of process, nor is there any allegation that the State Defendants consented to waive service of process under Rule 4(d). In the absence of such waiver, plaintiffs were obligated to serve the State Defendants in compliance with Rule 4(e).

Moreover, to the extent that plaintiffs now claim that the State Defendants have acknowledged receipt of service, there is no record support for that contention. Plaintiffs do not explain when or how the State Defendants purportedly acknowledge receipt of service. To the extent that plaintiffs' argument is that the State Defendants are aware of the lawsuit, the Sixth Circuit has held that actual knowledge of an action does not cure technically defective service of process. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).

Because plaintiffs, despite multiple opportunities, have not shown good cause for their failure to properly serve the State Defendants, all claims against the State Defendants are hereby **DISMISSED** without prejudice under Rule 4(m).

### K.   Moot Motions

The Court notes that plaintiffs have filed multiple motions during the pendency of this case demanding a final resolution [Docs. 105, 126, 131]. As all claims in this case have now been dismissed, those motions [Docs. 105, 126, 131] are **DENIED** as moot.

### L.   Vexatious Litigant Notice

Finally, the Court notes that plaintiffs have filed a large number of frivolous motions and other pleadings in this case, as addressed *supra*. Plaintiffs' filings have already consumed a significant amount of the Court's time and resources. Additionally,

84

while the Court does not opine on the merits of such, it notes that plaintiff McCurry currently has four other pending cases in this district alone. The Court further notes that, despite its efforts to carefully explain the reasons for denying plaintiffs' motions in its past orders, they continue to file new motions asserting the same meritless arguments the Court has previously rejected. Repeated frivolous filings of this sort exhaust limited judicial resources and prevent courts from devoting time and energy to non-frivolous cases filed by other litigants. *See Zatko v. California*, 502 U.S. 16, 17 (1991). As such, courts hold "inherent powers to protect themselves from vexatious litigation[.]". *Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997).

Although the Court declines to take action at this juncture, the Court *cautions* plaintiffs that future frivolous litigation may result in plaintiffs being deemed vexatious litigants and subjected to prefiling restrictions for future litigation. *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) (holding that district courts may properly enjoin vexatious litigants from filing further actions without first obtaining leave of court).

## III. Conclusion

For the reasons stated above, it is hereby **ORDERED** that:

1.  Plaintiffs' "Motion for Recusal of District Court Judge Thomas Varlan Pursuant to 28 U.S.C. § 455(a)" [Doc. 128] is **DENIED**.

2.  Plaintiffs' "Motion to Strike the Magistrates [sic] Amended Recommendation and Report (R & R) Doc 95 and Motion for Final Judgment by District Judge on their Objection Doc 68 to her Original Report Doc 67" [Doc. 96] is **DENIED**.

85

3.      Plaintiffs' "Objections to Magistrate Wyricks [sic] Report and Recommendation (R&R) Doc 67] are **OVERRULED**. Judge Wyrick's R&R [Doc. 67, as amended Doc. 95] is **ACCEPTED** and **ADOPTED** in whole.

4.      Plaintiffs' "Motion for an Injunction or Restraining Order Rule 65 FRCP Against Defendant Judge Thomas Wright for Acts of Treason 18 US Code § 2381 and Conspiracy to Defraud the United States 18 US Code § 371 and Motion for Criminal Contempt Pursuant to FRCRP [sic] 42 against Senior Judge Thomas Wright for his Disrespectful Comments about this Court" [Doc. 27] is **DENIED**.

5.      Plaintiffs' "Objections to Magistrate Wyricks [sic] Report and Recommendation (R&R) Doc 102" [Doc. 104] are **OVERRULED**. Judge Wyrick's R&R [Doc. 102] is **ACCEPTED** and **ADOPTED** in whole.

6.      Plaintiffs' "Second Motion for Criminal Contempt Against Senior Judge Thomas Wright" [Doc. 90] and "Motion for a Final Judgment on Both Outstanding Motions for Criminal Contempt Against Senior Judge Thomas Wright due to New Evidence" [Doc. 101] are **DENIED**.

7.      Plaintiffs' "Motion to Vacate/Set Aside Doc 18 Order Denying Motion for Sanctions Against the State of Tennessee Pursuant to FRCP 60" [Doc. 33] is **DENIED**.

8.      Plaintiffs' "Motion for Leave for District Court Judge to Review Magistrates [sic] Order Granting Extension of Time Doc 43 to Defendants Amy Briggs and Judge Jonathan Minga" [Doc. 45] is **DENIED**.

9.      Plaintiffs' "Objections to the Magistrates [sic] Order Doc 87 Denying their Motion to Bar Defendants Senior Judge Thomas Wright, Counsel Sandy Phillips, Benjamin McCurry and Kelly McCurry's Responses Doc 40" [Doc. 89] is **DENIED**.

10.      Plaintiffs' "Motion for an Injunction FRCP 65 against the Orders Entered by Defendant Judge James Lauderback for Violations of the Best Interests of the Child I.M. Protected by T.C.A. § 36-6-106" [Doc. 106] is **DENIED**.

11. Plaintiffs' "Motion for an Extension of Time to Amend the Federal Lawsuit Doc 24 due to a Conspiracy of the Defendants in this Case to Involve Other Individuals to Commit a Crime against Plaintiff Agness McCurry's Parental Rights" [Doc. 109] and "Amended Motion for Leave to Amend Complaint Doc 24 due to New Evidence Discovered After Service of Complaint and Continued Misconduct of Defendants in this Case Pursuant to FRCP 15" [Doc. 114] are **DENIED**.

12. Plaintiffs' "Objections to Magistrate Wyricks [sic] Report and Recommendation (R&R) Doc 108" [Doc. 113] are **OVERRULED**. Judge Wyrick's R&R [Doc. 108] is **ACCEPTED** and **ADOPTED** in whole.

13. Defendant Benjamin McCurry and Defendant Kelly McCurry's motions to dismiss [Docs. 41, 42] are **GRANTED**. All federal claims against these defendants are **DISMISSED** with prejudice.

14. Defendant Sandy Phillips's motion to dismiss [Doc. 48] is **GRANTED**. All claims against Attorney Phillips are **DISMISSED** without prejudice.

15. Defendants Jeffrey Ward, Amy Briggs, and Judge Jonathan Minga's motions to dismiss [Docs. 55, 81] are **GRANTED**. All federal claims against these defendants are **DISMISSED** with prejudice.

16. The Court **DECLINES** to exercise supplemental jurisdiction over plaintiffs' state law causes of action, and therefore, all state law claims are **DISMISSED** without prejudice.

17. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, plaintiffs' claims against Judge Thomas Wright, Judge James Lauderback, Judge Suzanne Cook, Chancellor John Rambo, Judge Lisa Rice, Judge Stacy Street, District Attorney General Steve Finney, Assistant District Attorney Mark Harris, Assistant District Attorney Joseph Shults, and Assistant District Attorney Abby Wallace are **DISMISSED** without prejudice.

18. Plaintiffs' "Motion to Include New Evidence of Case Law in the Federal Court of Australia and United States Supreme Court Supporting their Objections to Magistrate Wyricks [sic] Report and Recommendation (R&R) Doc 102" [Doc. 105], "Motion Requesting Final Orders on Magistrate Wyrick's Reports and Recommendations Doc 67, 69, 102 & 108" [Doc. 126], and "Motion for a Final Judgement [sic] by the District Court Judge on All Outstanding Matters in this Case Pursuant to the Civil Justice Reform Act (CJRA)" [Doc. 131] are **DENIED** as moot.

87

19.    There being no remaining claims, the Clerk is **DIRECTED** to **CLOSE** this case.  An appropriate judgment order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE